## WESTCOAT *v.* STATE

[No. 167, September Term, 1962.]

*Decided May 2, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Joseph Rosenthal* and *Norman N. Yankellow* for appellant.

*Joseph S. Kaufman, Special Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Leonard T. Kardy, State's Attorney for Montgomery County,* and *Cornelius F. Sybert, Jr., State's Attorney for Howard County,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

From a conviction of murder in the first degree and a sentence of life imprisonment imposed in the Circuit Court for Montgomery County, appellant prosecutes this appeal and presents two questions for our consideration: (1) did the trial court err in permitting the introduction of evidence of another crime, and (2) did the trial court err in permitting the State's Attorney to argue improperly.

Early in the morning of May 29, 1961, Howard County, Maryland, was the scene of two homicides. Officer Parlette of the Howard County Police Department, acting on the report of a suspicious motorist, discovered the body of "Buddy" Gallion in the office of a service station near the intersection of Routes 29 and 40. Mr. Gallion had been shot and the condition of the office indicated a robbery had taken place. The body was found by Parlette at 1:19 A. M.

After picking up and delivering his superior officer, Lieutenant Harrison, to the service station, Officer Parlette proceeded toward Ellicott City to get a fingerprint kit. Near Ellicott City, on Fells Lane, he came upon a K-9 patrol cruiser, with its beacon light flashing, parked on the roadside. He found the body of Officer Brightwell, a Howard County policeman, lying in the road. He also had been shot. Officer Brightwell's service revolver, summons book, blackjack, and flashlight were all missing. This discovery took place at approximately 1:30 A. M. This location was approximately one mile from the service station where Mr. Gallion was found shot.

At approximately 1:25 A. M. Sergeant Davis of the Baltimore County Police received a radio call about a homicide in Howard County. Observing a yellow and white Metropolitan automobile proceeding easterly on Route 40, he gave chase and brought the automobile to a halt on Rolling Road. The occu-

pants of the small automobile were appellant, who was a passenger, and Clarence Brindle, who was driving. A search of the two men and the automobile disclosed $204 on the appellant, plus a thirty-eight caliber service revolver similar to one carried by Howard County police. There was also found in the automobile a thirty-two caliber automatic pistol, a blackjack similar to the one carried by Officer Brightwell, a flashlight similar to the one carried by the deceased policeman, and his summons book. Later, evidence indicated that there was approximately $200 missing from the service station. The summons book indicated that Officer Brightwell had written a summons charging Brindle with a defective muffler at 1:15 A. M. The thirty-two caliber automatic was determined to belong to Brindle.

Appellant was indicted for murder of Gallion and robbery of the service station in Howard County, and the case was later removed to Montgomery County for trial.

Testimony of several witnesses placed appellant and Brindle at the service station just prior to 1:00 A. M. in the above mentioned automobile. Another witness testified that between 12:50 A. M. and 1:00 A. M., on Route 40, he had been fired at by someone in a similar car, both as to type and color. Brindle, who had been tried and convicted in Howard County for the murder of Officer Brightwell, testified that appellant had shot Gallion and robbed the service station. The appellant, testifying in his own behalf, denied any participation in the crimes and stated that he had been drinking so much, he had no recollection of anything which occurred after he and Brindle had left a bar earlier in the previous evening. He was found guilty by the jury of murder in the first degree, without capital punishment, and was sentenced by Judge Pugh to life imprisonment.

Throughout the trial appellant's trial counsel objected to the admission of any evidence concerning the slaying of Officer Brightwell, but on each occasion was over-ruled. On this appeal appellant's present counsel argues that such evidence was not only unnecessary and improper, but that its use was calculated solely to inflame the jury.

The real test of admissibility of evidence in a criminal case is the connection of the fact proved with the offense charged. Such evidence which has a natural tendency to establish the fact

at issue should be admitted. *Mazer v. State,* 231 Md. 40, 47, 188 A. 2d 552; *Pearson v. State,* 182 Md. 1, 13, 31 A. 2d 624, and cases cited therein. The shooting of Officer Brightwell took place shortly after the shooting of Gallion. The second homicide was evidence tending to show the flight of appellant and his cohort in order to escape apprehension. In many cases, we have upheld the admission of evidence of flight and actions involved in such flight, which tend to show an intent, or consciousness of guilt. *MacEwen v. State,* 194 Md. 492, 502, 71 A. 2d 464; *Cothron v. State,* 138 Md. 101, 113 Atl. 620. Cf. *Price v. State,* 227 Md. 28, 33, 175 A. 2d 11, and cases cited therein. Evidence of this separate homicide, for his part in which Brindle had already been convicted, was evidence tending to show that appellant and Brindle were conscious of the enormity of the events which had taken place at the service station so as to lead them, in desperation, to shoot a police officer in order to make good their escape. The two murders were closely related, both in time and place and they may well have anticipated that the report of the Gallion murder would be on the police alarm within a few minutes after discovery of the crime, as in fact it was. It is difficult to see how evidence of the shooting of the officer could be kept out of the trial for the murder of the service station operator. Evidence of acts may be admitted to show intent, or a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Wilson v. State,* 181 Md. 1, 3, 26 A. 2d 770. Cf. *Mazer v. State, supra.* Since the evidence of the second offense, the murder of Brightwell, had a natural tendency to establish, or offer a reasonable presumption or inference as to the murder of Gallion, it was correctly admitted and we so hold. Cf. *Ward v. State,* 219 Md. 559, 562, 150 A. 2d 257. We point out that Judge Pugh, in his advisory instructions to the jury, stated that the evidence of the slaying of Officer Brightwell was to be considered by the jury only to show flight by the appellant.

Appellant's second contention, that the trial court erred in permitting the state's attorney to argue improperly to the jury, over objection by defense counsel, is likewise untenable. He

has failed to indicate precisely what language of the argument he finds improper. A careful study of the argument as presented to us in the appendix to appellant's brief does not show any language prejudicial to appellant or the presentation of facts not already in evidence. *Contee v. State,* 223 Md. 575, 165 A. 2d 889, relied on by the appellant, involved a much more serious problem—that of improper remarks concerning racial prejudice, clearly improperly argued before the jury by the State in that case.

From the record before us, it appears that counsel for appellant objected to a reference to the slaying of Officer Brightwell and a characterization of the slain policeman as "this poor officer". He also objected to a statement as to the location of a ball point pen on the hood of the patrol car. There was no error in either instance. The evidence of the location of the pen was clearly before the jury. The remarks concerning the deceased officer, though they may have been appeals to the sympathy of the jurors, were not such as to be clearly prejudicial or inflammatory to the jury.

Other statements apparently objected to referred to the untruthfulness of the appellant and Brindle on the witness stand. The jury had the opportunity to observe those witnesses while they testified. The applicable principle here involved is set out in *Kellum v. State,* 223 Md. 80, 87, 162 A. 2d 473 :

> "In the absence of something to show that the jury was misled or influenced to the prejudice of the prisoner by such remarks the lower Court would not have been justified in setting aside the verdict, nor would this Court be warranted in reversing the judgment appealed from.",

citing *Toomer v. State,* 112 Md. 285, 76 Atl. 118. Chief Judge Brune, for the Court, went on to point out that although the statement objected to, a reading of an advertisement which listed the good qualities needed for police officers (the defendant having been convicted of assaulting a policeman) quite possibly should not have been allowed, this Court could not see how it could "sway a jury of reasonable intelligence and ordinary human experience." 223 Md. at page 88. We find that the

same principle applies here. They did not exceed the bounds of permissible argument.

Finding no merit in either of appellant's contentions, the judgment of the lower court must be affirmed.

*Judgment affirmed. Costs to be paid by appellant.*