762 A.2d 125

**William L. SNYDER, Sr.**

v.

**STATE of Maryland.**

**No. 139, Sept. Term, 1998.**

Court of Appeals of Maryland.

Nov. 16, 2000.

582

584

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

James Gentry, Special Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland and Diane E. Keller, Asst. Atty. Gen., on brief), Baltimore, for respondent.

**586**

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* CHASANOW,** RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The petitioner, William L. Snyder, was tried and convicted of the first degree premeditated murder of his wife and sentenced to life imprisonment. He appealed his conviction and sentence to the Court of Special Appeals, which reversed. *See Snyder v. State,* 104 Md.App. 533, 657 A.2d 342 (1995).[1] Following a second trial, the petitioner was again convicted of first degree murder and again sentenced to life imprisonment. In an unreported opinion, the Court of Special Appeals affirmed the judgment. On certiorari to this Court, the petitioner raises two issues: first, whether the trial court erred when it held that facts establishing that the petitioner did not inquire about the progress of the police investigation into his wife's murder were admissible as evidence of his consciousness of guilt and, second, whether the trial court erred by permitting the State to introduce testimony, that seven months prior to the murder, the petitioner and the victim had a physical dispute, and that, at some unspecified date during the marriage, the petitioner hit the victim. Answering the first question in the affirmative and the second question in the negative, we shall reverse.

### I.

Mrs. Kay Snyder, the wife of the petitioner, was murdered and, on February 14, 1986, her body was found lying on the

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision and adoption of this opinion.

1. The issues in that appeal were unrelated to the issues in the case *sub judice.*

side of the road across the street from their home. Seven years later, the petitioner was charged with, and tried for, her murder.

At the petitioner's first trial in the Circuit Court for Baltimore County, the State maintained that the petitioner killed his wife because their marriage was breaking apart and the petitioner wished to retain full ownership of their house and collect as the beneficiary on his wife's life insurance policy. Without forensic evidence or eyewitness testimony linking the petitioner to the murder, the State based its case solely on circumstantial evidence. During both opening and closing statements, the State stressed this circumstantial evidence, contending that it established that the petitioner was the killer. That evidence included the petitioner's behavior the day of the killing, evidence that the killer took pains to delay discovery of the crime, evidence that the murder did not occur during a robbery or sexual assault, evidence of the petitioner's "stormy" relationship with his wife leading up to the murder, evidence that the petitioner and his wife had a "big fight" the evening before the murder, as well as evidence establishing that the petitioner had a financial motive for the murder.

The petitioner denied the charges. He argued instead that he was married to the victim for almost 25 years, that his relationship with his wife was "great and getting better," and that "everything ha[d] been great for [the] last three or four months" before the murder.

A jury found the petitioner guilty of first degree murder and the court sentenced him to life imprisonment. On appeal, the Court of Special Appeals reversed the conviction and remanded for a new trial, having concluded that the trial court erred by admitting an investigating officer's unfairly prejudicial and speculative statements. *Snyder, supra,* 104 Md.App. at 553–54, 657 A.2d at 352–53.

The petitioner was retried. Similar to the first trial, and over the petitioner's objection, the State presented testimony regarding the petitioner's and the victim's relationship leading up to the murder. A friend of the victim testified that she had

a telephone conversation with the victim the night before the murder and that the victim stated in that conversation that she "just had a fight" with the petitioner, during which the petitioner "told her that she was a dead woman." The friend also stated that, at the time of this conversation, the victim "was crying and real excited." "She was upset." "She was scared." The State elicited additional testimony, also over the petitioner's objection, from the daughters of the petitioner regarding a physical dispute between the victim and the petitioner that occurred on July 30, 1985. The trial court stated its reasons for admitting the evidence of the July 30, 1985 dispute:

"I think this is a circumstantial case, and the latest analogy used to always say the links of a chain. Now, the writer is saying strands in a cable makes it even thinner than links of a chain. I think he is entitled to show a continuing atmosphere as being the motive. I agree he has to start somewhere.

"So your objection is noted for the record. I'm going to overrule it and allow it. I think it is circumstantial part of motive."

Once again, over the petitioner's objection, the State was permitted to offer testimony from the investigating authorities regarding the petitioner's conduct during the months and years following the murder. An investigating officer for the State testified that, since February 20, 1986, the day the petitioner voluntarily went to the police station to give "elimination prints," [2] the petitioner made no inquiry regarding the status of the police investigation. In closing argument, the prosecutor was thus able to urge the jury to find this lack of inquiry evidence of a guilty conscience. More particularly, he argued:

"If he didn't do it and he was, as he said, a loving spouse that cared about his wife, the relationship, that things were

---

2. "Elimination prints" are fingerprints taken from a low probability suspect, which are then measured against fingerprints lifted from the crime scene, in order to eliminate the possible suspect from a list of suspects.

getting better, if that were true, wouldn't he have called the police to inquire at the very least."

The petitioner was again convicted and sentenced to life imprisonment. He appealed the conviction to the Court of Special Appeals, where he argued, *inter alia,* that the trial court erred by admitting the evidence concerning the July 30, 1985 physical dispute and evidence regarding his failure to inquire about the status of the police investigation. The Court of Special Appeals affirmed the conviction, reasoning that "[i]n combination with evidence of [the petitioner's] efforts to hinder the investigation,[3] [the petitioner's] failure or refusal to maintain contact with the investigating officers was admissible circumstantial evidence of guilt." With regard to the petitioner's relationship with his wife, that court reasoned that evidence of the petitioner's "stormy" relationship with her was properly admitted because, the evidence was:

"not offered to establish a propensity for violent conduct. The State was entitled to establish that appellant had both a personal motive and an economic motive to murder the victim."

The petitioner filed a timely petition for certiorari, which we granted in order to consider the important evidentiary issues raised.

## II.

### A.

First, the petitioner argues that the evidence offered to establish that he did not inquire about the progress of the police investigation into his wife's murder was inadmissible to

---

**3.** Prior to the petitioner's arrest the victim's brother, Mr. Johnson, posted a $10,000 reward for information leading to the murderer. The State elicited testimony from Mr. Johnson that, upon learning of the reward, the petitioner stated, "the murder will never be solved." The State also offered testimony from another witness that the petitioner told him not to cooperate with the police because "they were not going to find out who did it." The State argued to the jury that these facts also exhibited a consciousness of guilt.

prove a consciousness of guilt. He contends that culpability for murdering his wife cannot logically be inferred from the failure to inquire. Citing *Bedford v. State*, 317 Md. 659, 667–68, 566 A.2d 111, 115 (1989), and *Pettie v. State*, 316 Md. 509, 519–20, 560 A.2d 577, 581–82 (1989), the petitioner argues that, because, as it is in this case, the failure to inquire is so ambiguous and is subject to so many interpretations, evidence of the lack of inquiry cannot be probative of consciousness of guilt and, therefore, simply is irrelevant.

The State disagrees. It argues that the petitioner misreads the threshold requirement for evidence to be considered relevant, and contends that the trial court properly admitted the evidence. Citing *McCormick on Evidence* § 185, at 887 (4th ed.1992), the State maintains that most evidence offered at trial has some probative value and that, indeed, virtually all human conduct is subject to more than one interpretation or explanation.[4] In this case, it argues, the petitioner's failure to inquire into the police investigation was probative on a "hotly contested issue—the nature of [the petitioner's] relationship with his wife." Therefore, the state contends, the ambiguity and competing inferences about which the petitioner complains do not affect admissibility, but rather go to the weight that the trier of fact determines to give the evidence. In sum, the State argues that,

> "[t]he jury in this case, looking to the circumstances as whole, could reasonably infer that, if [the petitioner] was a loving spouse, as his counsel insisted he was, he would have called police sometime in [the] months and years following his wife's murder to ask about the progress of their investigation."

### B.

The rules governing the admissibility of evidence are contained in Chapter 400 of the Maryland Rules of Evidence.

---

**4.** In the case *sub judice,* the State admitted that the lack of interest showed by the petitioner in the police search for his wife's murderer was ambiguous because it "may be subject to more than one interpretation...."

The first rule in that chapter, Md. Rule 5–401, defines "relevant evidence." It provides:

" 'Relevant evidence' means evidence having *any tendency* to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence."

(Emphasis added). This Court has applied and discussed this definition. *See, e.g., Conyers v. State,* 354 Md. 132, 176, 729 A.2d 910, 933 (1999), *cert. denied,* 528 U.S. 910, 120 S.Ct. 258, 145 L.Ed.2d 216 (1999); *Hopkins v. State,* 352 Md. 146, 721 A.2d 231 (1998); *Smallwood v. Bradford,* 352 Md. 8, 26–27, 720 A.2d 586, 595–96 (1998); *Merzbacher v. State,* 346 Md. 391, 697 A.2d 432 (1997). While often noting the important distinction between weight and admissibility and favoring a policy of broad admissibility, we have consistently held that a party seeking to establish the relevancy of proffered evidence does not have to demonstrate that the evidence is weighty enough to carry that party's burden of persuasion. *See* Md. Rule 5–401. *See also Conyers v. State,* 354 Md. at 176, 729 A.2d at 933; *Hopkins,* 352 Md. at 159, 721 A.2d at 237; *Smallwood,* 352 Md. at 26–27, 720 A.2d at 595–96; *Merzbacher v. State,* 346 Md. at 404–405, 697 A.2d at 439. In fact, Rule 5–401 articulates the threshold that must be reached; that threshold expressly requiring only that the evidence have "any tendency" to prove a fact of consequence to the cause of action.

Relevance is a relational concept. Accordingly, an item of evidence can be relevant only when, through proper analysis and reasoning, it is related logically to a matter at issue in the case, *i.e.,* one that is properly provable in the case. *See* Md. Rule 5–401. *See also Williams v. State,* 342 Md. 724, 736, 679 A.2d 1106, 1112 (1996). In order to find that such a relationship exists, the trial court must be satisfied that the proffered item of evidence is, on its face or otherwise, what the proponent claims that item to be, and, if so, that its admission increases or decreases the probability of the existence of a material fact. *See, e.g., Pettie,* 316 Md. at 519–20, 560 A.2d at 582 (declining to reach issue of whether proffered

evidence was admissible because facts did not support conclusion that evidence was what proponent claimed it to be). *See also Pappaconstantinou v. State,* 352 Md. 167, 181, 721 A.2d 241, 248 (1998) (observing that "[o]bviously, evidence that the trial judge deems unreliable or untrustworthy is not probative to any fact that is of consequence to the determination of the case, and hence, is not relevant evidence"). Moreover, the relevancy determination is not made in isolation. Instead, the test of relevance is whether, in conjunction with all other relevant evidence, the evidence tends to make the proposition asserted more or less probable. *Spector v. State,* 289 Md. 407, 434, 425 A.2d 197, 211 (1981).

▮ Md. Rules 5–402 and 5–403 provide additional guidance with respect to the admissibility of relevant evidence. Rule 5–402 provides:

"Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, *all* relevant evidence is admissible. Evidence that is *not* relevant is *not admissible.*"

(Emphasis added). Rule 5–403 makes clear, by prescribing a balancing test, that relevancy is not the only test for admissibility of evidence. That rule provides:

"Although relevant, evidence may be excluded if its *probative value is substantially outweighed by the danger of unfair prejudice,* confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

(Emphasis added).[5] Therefore, evidence which meets the definition of "relevant evidence" under Rule 5–401, and which,

---

5. Md. Rule 5–403 took effect July 1, 1994. The Rules Order dated December 15, 1993, however, provided that "any trial or hearing commenced prior to July 1, 1994 shall continue to be governed by the law and Rules in effect on June 30, 1994, and ... no evidence shall be admitted against a defendant in a criminal action in proof of a crime committed prior to July 1, 1994, unless that evidence would have been admissible under the law and Rules in effect on June 30, 1994." Because the charged crime occurred in 1986, we note that Md. Rule 5–403 itself does not apply in the case *sub judice.* The principle embodied

therefore, would be admissible under Rule 5–402 as having logical relevance, may nonetheless be excluded under Rule 5–403. *See, e.g., Merzbacher,* 346 Md. at 404, 697 A.2d at 439; *Williams,* 342 Md. at 737, 679 A.2d at 1113; Md. Rule 5–403.

■ If relevant, circumstantial evidence regarding a defendant's conduct may be admissible under Md. Rule 5–403, not as conclusive evidence of guilt, but as a circumstance tending to show a consciousness of guilt. *Hunt v. State,* 312 Md. 494, 503–04, 540 A.2d 1125, 1129–30 (1988); *Wright v. State,* 312 Md. 648, 654–655, 541 A.2d 988, 991 (1988); *Davis v. State,* 237 Md. 97, 105–106, 205 A.2d 254, 259 (1964), *cert. denied,* 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); *Westcoat v. State,* 231 Md. 364, 368, 190 A.2d 544, 546 (1963). Thus, this Court has held that, through a series of inferences, evidence of a defendant's behavior after the commission of a crime may be admissible. *See, e.g., Whittlesey v. State,* 340 Md. 30, 59–62, 665 A.2d 223, 238 (1995) (holding that other crimes evidence, consisting of testimony about the defendant's admission of other crimes, properly admitted under special circumstances indicating defendant's consciousness of guilt); *Hunt v. State, supra,* 312 Md. at 503–504, 540 A.2d at 1129–30 (determining evidence that defendant escaped or attempted to escape from custody admissible as inference to prove a consciousness of guilt); *Wright v. State, supra,* 312 Md. at 654–655, 541 A.2d at 991–92 (admitting evidence that defendant concealed his identity as supporting inference of the defendant's consciousness of guilt). *But cf., Bedford v. State, supra,* 317 Md. at 667–68, 566 A.2d at 115 (determining evidence of defendant's possession of wire after arrest inadmissible as evidence of plan to escape and therefore inadmissible as evidence of a consciousness of guilt because, under the facts of the case, "[t]he possession of the wire [was] so equivocal" that its admission into evidence was more prejudicial than probative and did not make the proposition asserted more probable).

---

in that rule constitute part of the common law of evidence, however, and therefore, in that context, is applicable.

**594**

■ Consciousness of guilt can be inferred either from some "pre-arrest silence," *Grier v. State*, 351 Md. 241, 252, 718 A.2d 211, 217 (1998) (holding pre-arrest silence may be admissible as substantive evidence of guilt, on a case-by-case basis, when it amounts to a tacit admission); *cf. Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (determining, in a post-arrest context, that *Miranda*[6] warnings contain an implicit assurance that silence will carry no penalty), or from the "failure to inquire." *See State v. Marshall*, 123 N.J. 1, 586 A.2d 85, 143–46 (1991) (inquiring too little led to an inference of a consciousness of guilt). The standard of proof for pre-arrest silence is more stringent than the standard of proof for failure to inquire. *See id.* at 146 (noting that pre-arrest silence, that of refusing to answer questions, enjoys constitutional protection). As such, if consciousness of guilt cannot be inferred from pre-arrest silence, then it would appear that, clearly, it may not be inferred from a failure to inquire.

■ When viewed in the context of the petitioners right to remain silent, the admission of the petitioner's silence as evidence of his consciousness of guilt in the case *sub judice* has an element of unfairness, and is not very probative of that fact. *See, e.g., Grier v. State*, 351 Md. 241, 252, 718 A.2d 211, 217 (opining that "[e]vidence of a person's silence is generally inadmissible because '[i]n most circumstances silence is so ambiguous that it is of little probative force' ") (internal

---

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (allowing defendant the right to be warned of several rights). Suspects usually hear the following from government authorities:

"1. You have the right to remain silent,

"2. Anything you say can and will be used against you in a court of law,

"3. You have the right to talk to a lawyer and have him present with you while being questioned,

"4. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning,

"5. You may also waive the right to counsel and your right to remain silent and you may answer any question or make any statement you wish. If you decide to answer questions you may stop answering questions at any time, to consult with an attorney,

"6. Do you understand what I have told you?"

citation omitted). Indeed, when the suspect has a right to remain silent, evidence that a suspect refused to speak with the police is not ordinarily admissible to prove his or her consciousness of guilt. *Id.* at 252–53, 718 A.2d 211. In the case *sub judice,* the petitioner was considered a suspect in his wife's murder. Although the petitioner declined to speak about his wife's murder, he voluntarily cooperated with authorities, giving exemplars of his fingerprints, hair and blood as requested. Under these circumstances, the petitioner's silence is too equivocal to be probative.

■ Simply because the authorities were not required to advise the petitioner of his right to remain silent until they subjected him to a custodial interrogation does not mean that the petitioner's silence prior to that occurrence should receive less protection or that the petitioner may be penalized on that account. Many of our sister states that have considered this issue have expressed their distrust of evidence of pre-arrest silence as probative of a consciousness of guilt, noting its inherently low probative value and its high potential for unfair prejudice. *See Commonwealth v. Thompson,* 431 Mass. 108, 116, 725 N.E.2d 556, 565 (2000) (determining defendant's pre-arrest silence, blank stares and failure to inquire about his wife's murder properly excluded as evidence of consciousness of guilt); *Silvernail v. State,* 777 P.2d 1169, 1175 (Alaska App.1989) (noting a "distrust of silence as probative evidence of guilt"); *Commonwealth v. Nickerson,* 386 Mass. 54, 62, 434 N.E.2d 992, 995 (1982) (noting "impeachment of a defendant with the fact of his pre-arrest silence should be approached with caution"); *Commonwealth v. Harris,* 371 Mass. 462, 477, 358 N.E.2d 982, 991 (1976) (holding defendant's hanging his head and biting his lips not admissible as nontestimonial admission demonstrating consciousness of guilt). *See also People v. Quintana,* 665 P.2d 605, 610 (Colo.1983); *People v. Conyers,* 52 N.Y.2d 454, 458–59, 438 N.Y.S.2d 741, 743, 420 N.E.2d 933, 936 (1981).

■ In the case *sub judice,* the State does not attempt to infer consciousness of guilt from the petitioners pre-arrest

silence, its focus being on the petitioner's subsequent failure to inquire about the progress of the police investigation into his wife's murder. The relevance of the petitioner's failure to inquire depends upon whether that evidence supports four inferences: from the failure to inquire, satisfaction of the case not being solved or actively pursued; from the satisfaction of the case not being solved or actively pursued, a consciousness of guilt; from a consciousness of guilt, a consciousness of guilt of murder; and from a consciousness of guilt of murder, actual guilt of murder. We believe that, under the circumstances of this case, evidence that the defendant failed to call the police to inquire about the status of the investigation, even for seven years, is too ambiguous and equivocal to support such inferences.

At best, the admission of the evidence invites the jury to speculate. The jury is asked to presume that the petitioner's failure to inquire is probative of the absence of a loving relationship between the petitioner and his wife and then to speculate as to the connection between the petitioner's relationship with his wife and his wife's murder, assuming in the process, that the petitioner's failure to inquire is indicative of a guilty conscience. These assumptions and speculations lack probative value where, as in this case, the State has presented no testimony or evidence, from the investigating authorities or any other source, either as to the general response of family members during a murder investigation or of any specific responses or types of inquires made by members of the Snyder family in this particular case. Moreover, the State presented no evidence that the petitioner was requested by the authorities to inquire regularly and certainly, it produced no evidence that the petitioner voluntarily stated that he would regularly inquire. Thus, there is no evidentiary basis for the conclusion that the jury drew.

This Court's holding in *Pettie v. State*, 316 Md. 509, 560 A.2d 577 (1989), is instructive. There, the petitioner, while an inmate at the Maryland Correctional Training Center, was charged with committing various sexual acts, including sodomy, upon another inmate. *Id.* at 512, 560 A.2d at 578. The

State was permitted to introduce, at trial, evidence that, after being charged and placed on administrative segregation, a guard had been called to defendant's cell by another inmate who had found an apparent suicide note, where the defendant was discovered, "non responsive but conscious," with a single cut to his wrist, *id.* at 512, 560 A.2d at 578, that, in other words, the defendant had attempted suicide. The State's theory was that evidence of the defendant's attempted suicide tended to prove the defendant's consciousness of guilt. *Peltie, supra,* at 509, 560 A.2d at 577. The Court of Special Appeals having affirmed the trial court's judgment, *Pettie v. State,* 70 Md.App. 602, 522 A.2d 394 (1987), we then granted certiorari to consider, *inter alia,* the defendant's challenge to the admission of that evidence. We held that the evidence offered by the State of the attempted suicide was not probative and, therefore, irrelevant. Judge Cole, writing for the Court, explained:

"As a general matter, evidence of conduct of the accused subsequent to the charged criminal offense is admissible if probative of culpability. *See* 29 Am.Jur.2d, *Evidence* § 278. Evidence has been admitted which tends to show the accused resisted arrest, *Bird v. United States,* 187 U.S. 118, 23 S.Ct. 42, 47 L.Ed. 100 (1902); took to flight or concealment prior to arrest, *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); suppressed or destroyed evidence, *Hickory v. United States,* 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474 (1896); escaped or attempted to escape from custody, *Hunt v. State,* 312 Md. 494, 540 A.2d 1125 (1988); concealed his identity, *Wright v. State,* 312 Md. 648, 541 A.2d 988 (1988); attempted suicide, *State v. Campbell,* 146 Mont. 251, 405 P.2d 978 (1965); possessed weapons, *People v. Northcott,* 209 Cal. 639, 289 P. 634 (1930); possessed stolen property, *State v. Barnes,* 47 Or. 592, 85 P. 998 (1906); or engaged in similar conduct. *See* Wigmore, *Evidence,* § 276 (3d ed.1940).

"Under Maryland law, evidence of a defendant's flight is admissible, not as conclusive of guilt, but as a circumstance tending to show a consciousness of guilt. *Wright v. State,*

*supra,* 312 Md. 648, 541 A.2d 988; *Hunt v. State, supra,* 312 Md. 494, 540 A.2d 1125; *Davis v. State,* 237 Md. 97, 205 A.2d 254 (1964), *cert. denied, Davis v. Maryland,* 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); *Westcoat v. State,* 231 Md. 364, 190 A.2d 544 (1963).

"As we see it, however, attempted suicide cannot easily be circumscribed, as that act is subject to innumerable interpretations. Even if we were to agree that evidence of attempted suicide is admissible as analogous to flight and implies a consciousness of guilt (and we do not decide that issue), the facts here simply do not support the conclusion that Pettie tried to kill himself at all, much less that he did so as a reaction to any attack on or sodomy of [the victim]."

*Id.* at 519–20, 560 A.2d at 581–82.

To be sure, the *Pettie* Court recognized that, in other jurisdictions, attempted suicide has been considered probative of a consciousness of guilt. This Court did not reach the issue, however, because the ambiguity and equivocal nature of the facts surrounding the alleged act did not satisfy the Court that the act was what the State purported it to be. As relevance only has meaning in the context of the relationship between the proffered item and the matter properly provable in the case, we concluded that the proffered evidence had no logical relevance and, therefore, the proffered evidence could not reasonably affect an assessment of the fact to be inferred, *i.e.,* that the defendant attempted suicide, leading to a conclusion that he did so as result of a consciousness of guilt. *Id.* at 520, 560 A.2d at 582.

If, as a general proposition, evidence of a defendant's failure to inquire about the progress of a police investigation were probative of a consciousness of guilt, any reaction or failure to react to the death of a loved one by a family member or friend could be construed to be probative of guilt. Therefore, the fact that a defendant failed to inquire about the police investigation, as in this case, see *State v. Marshall,* 123 N.J. 1, 586 A.2d 85, 143–46 (1991) (inquiring too little led to conviction), or inquired too often, see *Smithart v. State,* 946 P.2d 1264, 1275

(Alaska App.1997) (inquiring too much equaled suspicion, which led to conviction), would suffice to support a jury verdict. So too, would evidence that the defendant inquired or grieved in a way that the State deemed out of the norm, irrespective of the significant ambiguity of the conduct. This would place a potential defendant in the perennial unenviable position of being caught between a rock and a hard place.

The State's reliance upon *State v. Marshall* is misplaced. In *Marshall,* the defendant offered a $10,000 dollar reward to anyone with information helpful in locating his wife's killer and a letter was sent to the prosecutor's office stating that he was willing to cooperate and divulge any required information, 586 A.2d at 144, but during the resulting investigation, he failed to inquire about the progress of finding his wife's murderer. Rejecting the defendant's contention that the prosecutor's cross examination regarding his failure to inquire infringed on his privilege against self-incrimination, *id.* at 144, the court, noting the defendant's actions in offering the reward and communicating with the police, opined, "[t]he prosecutor's inquiry did not address defendant's refusal to admit or reveal his own guilt, but rather questioned an aspect of his conduct that appeared to conflict with his avowed interest in tracing down his wife's murderer." *Id.* at 146. Thus, in the case *sub judice,* because the petitioner never indicated an avowed interest in tracking down his wife's murderer, *Marshall* is not at all analogous and its holding is inapplicable.

Even if, as the State urges, the failure to inquire about the police investigation has some probative value, we are nevertheless convinced that the trial court abused its discretion in admitting the evidence in this case. As we have seen, there is a strong policy in favor of the admission of logically relevant evidence so long as the proffered evidence satisfies the requirements of Md. Rule 5–403, *i.e.,* its probative value is not substantially outweighed by the danger of unfair prejudice. Once evidence is determined to be relevant, the question is what inferences, together with all of the other relevant evidence, can the jury draw from the evidence. Any probative value evidence of failure to inquire has is slight compared to

the substantial danger that it will result in unfair prejudice. *See Bedford v. State, supra,* 317 Md. 659, 566 A.2d 111. *See also* 10 *Moore's Federal Practice* § 403.02[3] (2d ed.1979) (pointing out, "[i]f the relevance of the proffered evidence is suspect or slight but would be prejudicial then any justification of its admission is slight or non-existent").

We concluded, in *Bedford,* that ambiguous and equivocal evidence similar to that at issue in this case is inadmissible as proof of a consciousness of guilt. There, the defendant, who was convicted of first degree murder, challenged on appeal the trial court's admission, as proof of his plan to escape and, therefore, his consciousness of guilt, evidence that, during a strip search, prison guards discovered a four inch wire, commonly used to unlock handcuffs, hidden on his person. 317 Md. at 664, 566 A.2d at 113. This Court held that the introduction of the wire was reversible error, reasoning:

> *"The authorities are uniform that evidence of a consciousness of guilt is generally circumstantial and should be more probative on the issue of ultimate guilt than prejudicial to the defendant.* McCormick, *Evidence* § 271; *see* Fed.R.Evid. 403. If the judge finds that the proposed material is likely to lead a reasonable jury to infer the defendant's guilt without causing him substantial prejudice, then the judge may allow the jury to consider the evidence in reaching a verdict as to the charged offense. If, however, the inference as to ultimate guilt is weak and the circumstantial evidence merely tends to create in the minds of jurors the impression that the defendant is of questionable character and has a propensity for bad acts and probably acted accordingly on the charged occasion, then the evidence should be excluded.

> "We are not convinced that possession of a wire under the circumstances in this case is a 'substantial step' toward making an escape. *There are too many other possible reasons why Bedford could have been in possession of that wire.* While we doubt that the wire would be a tool for intra-prison work activity, we do accept that its presence could lead the jury to other inferences about Bedford. The

jury could consider it as a weapon and view Bedford as being violent, or could see defendant's possession of the wire as a breaking of rules. Consequently, it could view Bedford as a 'bad man' for breaking such a rule.

"Because *the possession of the wire is so equivocal,* we hold that its admission into evidence was more prejudicial to Bedford than probative of an intent to escape and should have been excluded. It was reversible error to admit this evidence."

*Id.* at 667–68, 566 A.2d at 115. (emphasis added).

The same rationale applies with equal, if not greater force, to the petitioner's failure to inquire. In this case, the petitioner's silence or failure to inquire has, at best, only slight probative value, but its prejudicial effect is significant and unfair. The jurors may have been inflamed by the evidence that the petitioner did not show an interest in the police investigation and, therefore, ignored the nonexisting, or weak, link between the failure to inquire and a consciousness of guilt.

### III.

In light of our holding regarding the petitioner's consciousness of guilt, we need not address the remaining issue. As indicated, however, we will exercise our discretion and address the issue for the guidance of the trial court on remand.

The petitioner complains that the trial court erroneously admitted evidence of the "stormy" relationship between the petitioner and the victim to prove his motive to commit the murder. He argues that, because there was no direct evidence of criminal agency, the trial court improperly permitted the State to introduce testimony that on July 30, 1985, seven months prior to the murder, the petitioner and the victim had a physical dispute and, even more inappropriately, permitted the State to elicit testimony that at some unspecified date the petitioner hit the victim.

The State argues that the trial court properly exercised its discretion in admitting this evidence, contending that it is probative of the nature of their marital relationship. Citing

*Burch v. State,* 346 Md. 253, 270–71, 696 A.2d 443, 452, *cert. denied,* 522 U.S. 1001, 118 S.Ct. 571, 139 L.Ed.2d 410 (1997), and cases from other jurisdictions, it denies that evidence that the petitioner responded to a physical attack by his wife or engaged in a mutual physical dispute with her constitutes prior "bad acts evidence." It argues, however, that, even if tantamount to prior bad acts evidence, the trial court exercised appropriate discretion in admitting the evidence on a question by question basis, to show motive, identity and agency and to rebut the petitioner's claim that his relationship with his wife was great.

### A.

In addition to the rules discussed *supra,* which define relevant evidence and the general rules which govern the admissibility of relevant evidence, Maryland Rule 5–404(b) limits the admissibility of evidence offered to prove criminal propensity. That rule provides:

"(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

As a preliminary matter, the evidence at issue in this case falls comfortably within the definition of "other wrongs" or "bad acts." See *Klauenberg v. State,* 355 Md. 528, 735 A.2d 1061 (1999), noting, after reviewing cases from this, and other, jurisdictions:

"[T]he general theme running through [the case law] is that a bad act is an activity or conduct, not necessarily criminal, that tends to impugn or reflect adversely upon one's character, taking into consideration the facts of the underlying lawsuit."

*Id.* at 549, 735 A.2d 1061. Thus, evidence is inadmissible if offered for the purpose of proving criminal propensity. *See*

*Merzbacher v. State,* 346 Md. 391, 406, 697 A.2d 432, 440 (1997) (noting the, "rationale for the rule is to prevent jury from punishing defendant for having 'criminal propensity' "); *Ayers v. State,* 335 Md. 602, 630, 645 A.2d 22, 35 (1994) (reaffirming principle that "evidence of a defendant's prior criminal acts may not be introduced to prove guilt of the offense for which the defendant is on trial"); *Harris v. State,* 324 Md. 490, 496, 597 A.2d 956, 960 (1991) (holding that "[e]vidence of other bad acts may, however, be admissible if it is relevant to the offense charged on some basis *other* than mere propensity to commit crime") (emphasis added); *Jones v. State,* 182 Md. 653, 656, 35 A.2d 916, 917 (1944) (opining that "evidence of unconnected and unrelated crimes which does not show knowledge, motive, intent, a common scheme or identification is inadmissible against a defendant in a criminal case as tending to show that he committed the crime whereof he stands indicted in such case").

 To be admissible, evidence otherwise excludable as other crimes or propensity evidence, must be substantially relevant to some contested issue in the case and be offered for a purpose other than to prove the criminal character of the defendant, subject, of course, to the balancing requirement of Maryland Rule 5–403. *See Streater v. State,* 352 Md. 800, 806–07, 724 A.2d 111, 114 (1999); *Wynn v. State,* 351 Md. 307, 339–40, 718 A.2d 588, 604 (1998); *State v. Taylor,* 347 Md. 363, 368, 701 A.2d 389, 392 (1997); *Terry v. State,* 332 Md. 329, 334, 631 A.2d 424, 427 (1993). In *State v. Faulkner,* 314 Md. 630, 634–35, 552 A.2d 896, 898 (1989), this Court established a three-step test for evaluating the admissibility of other crimes evidence:

> "When a trial court is faced with the need to decide whether to admit evidence of another crime-that is, evidence that relates to an offense separate from that for which the defendant is presently on trial-it first determines whether the evidence fits within one or more of the *Ross* [*v. State,* 276 Md. 664, 350 A.2d 680 (1976) ] exceptions. That is a legal determination and does not involve any exercise of discretion. *See Cross* [*v. State* ], 282 Md. [468] at 474, 386

A.2d [757] at 761[ (1978) ]; *Moore v. State*, 73 Md.App. 36, 44, 533 A.2d 1, 5 (1987), *cert. denied*, 311 Md. 719, 537 A.2d 273 (1988).

"If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence. *Lodowski v. State*, 302 Md. 691, 728, 490 A.2d 1228, 1247 (1985), *defendant's petition for cert. denied*, 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725, *vacated*, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711, *rev'd on other grounds*, 307 Md. 233, 513 A.2d 299 (1986); *Cross*, 282 Md. at 478, 386 A.2d at 764. We will review this decision to determine whether the evidence was sufficient to support the trial judge's finding. "If this requirement is met, the trial court proceeds to the final step. The necessity for and probative value of the 'other crimes' evidence is to be carefully weighed against any undue prejudice likely to result from its admission. *Cross*, 282 Md. at 474, 386 A.2d at 761 (internal citations omitted). This segment of the analysis implicates the exercise of the trial court's discretion. *Id.; Moore*, 73 Md.App. at 44–45, 533 A.2d at 5."

 One of the purposes for which other crimes evidence may be admitted under Rule 5–404(b) is to prove motive. Motive is the catalyst that provides the reason for a person to engage in criminal activity. *See Brown v. State*, 359 Md. 180, 184, 753 A.2d 84, 86 (2000) (finding that purpose of murdering pregnant mistress was not wanting wife to discover infidelity); *Watkins v. State*, 357 Md. 258, 261–62, 744 A.2d 1, 2–3 (2000) (determining that purpose of robbery was greed). "Like intent, motive is a mental state, the proof of which necessarily requires inferences to be drawn from conduct or extrinsic acts." *See Johnson v. State*, 332 Md. 456, 471, 632 A.2d 152, 159 (1993).

 Motive is not an element of the crime of murder, but, in addition to supporting the introduction of other crimes evidence, it also may be relevant to the proof of two of the other exceptions to Rule 5–404, intent or identity. *See Bryant*

*v. State,* 207 Md. 565, 586, 115 A.2d 502, 511 (1955) (allowing evidence of convictions to be admitted because it showed appellant's behavior toward girl whom he killed only a month later, thus tending to show motive and intent); *see also Harris v. State,* 324 Md. 490, 501, 597 A.2d 956, 962 (1991) (noting to establish motive or intent, evidence of other bad acts may have substantial relevance); *Faulkner, supra,* 314 Md. at 634, 552 A.2d at 898 (figuring other crimes evidence "may be admitted if it tends to establish *motive, intent,* absence of mistake, a common scheme or plan, *identity,* opportunity, preparation, knowledge, absence of mistake or accident") (emphasis added); *Ross v. State,* 276 Md. 664, 669–70, 350 A.2d 680, 684 (1976) (holding that when "several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other," then evidence of other bad acts is admissible to show motive). To be admissible as evidence of motive, however, the prior conduct must be " 'committed within such time, or show such relationship to the main charge, as to make connection obvious,' . . . that is to say they are 'so linked in point of time or circumstances as to show intent or motive.' " *Johnson v. State, supra,* 332 Md. at 470, 632 A.2d at 158–159, *quoting Bryant v. State,* 207 Md. at 586, 115 A.2d at 511 and *Harrison v. State,* 276 Md. 122, 155, 345 A.2d 830, 849 (1975).

 Evidence of previous quarrels and difficulties between a victim and a defendant is generally admissible to show motive. *See, e.g., Jones v. State,* 182 Md. 653, 35 A.2d 916 (1944). In that case, the defendant was convicted of murdering his wife. On appeal, he argued that it was improper for the trial court to have admitted evidence of certain violent acts he directed toward his wife during the course of their marriage. Concluding that the evidence was admissible for reasons other than propensity, this Court pointed out:

> "In the case now before this court, the evidence presented, the subject of these two exceptions, shows a long course of ill treatment of the deceased by the accused; that they frequently quarreled and, although they renewed relationships at various times, there was almost a continuous state

off hostility between them. These other crimes of the accused, having been committed on the same person, are so closely connected to the offense charged as to be evidence as to the intent and motive of the accused in this case. We therefore believe that the trial court was correct in admitting this evidence, the weight of it to be determined by the jury."

*Id.* at 657, 35 A.2d at 918.

The petitioner argues that the present case is distinguishable from *Jones*. He maintains that the *Jones* analysis does not apply, pointing out that, in this case, the prior physical dispute was instigated by the victim, who physically attacked the petitioner, after the dispute, the petitioner immediately sought, and obtained, an *ex parte* order from the court to avoid further physical disputes, and the couple had reconciled for approximately four months prior to the murder. We disagree.

The factors which the petitioner notes, while tending to prove that the petitioner was not the aggressor and to negate the probability that he is the murderer, do not affect the admissibility of the evidence to prove motive. Instead, those matters more properly affect the weight to be given the evidence. So it is also with respect to the reconciliation of the parties. As noted in *Jones*, reconciliation does not change the fact that the incident occurred and its impact, or not, should more properly be left to the determination of the trier of fact.

Other courts that have had opportunity to address the admissibility of evidence of disharmony in the household as probative of the nature of a marital relationship have reached similar results. In *Commonwealth v. Chandler*, 554 Pa. 401, 721 A.2d 1040 (1998), the defendant was convicted of possessing an instrument of crime, as well as, two counts of first-degree murder for killing his wife and sister-in-law. The defendant contended, on appeal, that the trial court abused its discretion by admitting evidence of his prior abuse of his wife. The Pennsylvania Supreme Court disagreed, opining that:

"[e]vidence concerning the previous relations between a defendant and a victim is relevant and admissible for the purpose of proving ill-will, motive or malice.... This principle applies when the decedent was the spouse of the accused. Thus, evidence concerning the nature of the marital relationship is admissible for the purpose of proving ill-will, motive or malice. This includes, in particular, evidence that the accused physically abused his or her spouse.... Evidence of prior abuse is also admissible if it is 'part of a chain or sequence of events which formed the history of the case and was part of its natural development.'

. . . .

"Those statements were admissible under the 'state of mind' exception to the hearsay rule because decedents opinion of defendant and her marriage to him went to the presence of ill-will, malice, or motive for the killing."

*Id.* at 409–11, 721 A.2d at 1044–45 (internal citations omitted).

In *Commonwealth v. Cormier*, 427 Mass. 446, 693 N.E.2d 1015 (1998), the defendant was convicted of the first degree murder of his estranged wife. He contended, on appeal, that the evidence of prior bad actsseveral incidents in which the defendant physically attacked the victim, threatened her, or expressed to a third party his desire to kill her was improperly admitted. The Supreme Judicial Court of Massachusetts saw it differently, noting that:

" 'It is well settled that the prosecution may not introduce evidence that a defendant has previously misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose.' 'Evidence of a hostile relationship between a defendant and his spouse may be admitted as relevant to the defendant's motive to kill the victim spouse.' A defendant's oral threats and repeated acts of violence may indicate 'settled ill-will towards his wife, and therefore bear directly on the question

whether there was any motive for him to commit the crime.' "

*Id.* at 450, 693 N.E.2d at 1018 (internal citations omitted).

The court further opined, *id.*, that "[t]he evidence regarding the incidents introduced in this case was directly relevant in establishing the defendant's possible motive and intent in killing his wife. Such evidence was especially important in view of the defendant's claim that he killed her in self-defense." Moreover, the court believed that, "[t]he judge's limiting instructions reduced the possible prejudicial effect of this evidence [when the judge] instructed the jury more than once that such evidence may be used only to show motive or intent." *Id.*

Also to the same effect is *State v. Alford,* 257 Kan. 830, 896 P.2d 1059 (1995). In that case, the defendant was convicted of the first degree murder of his wife, aggravated kidnaping, and unlawful possession of a firearm. Rejecting his argument that admitting his written statement regarding an earlier aggravated battery was error because it was inadmissible hearsay, *id.* at 840, 896 P.2d at 1067, the Kansas Supreme Court explained that the State:

"sought to introduce evidence of prior aggravated battery to show discord rather than to prove the truth of the matter asserted. Evidence of a discordant marital relationship and a wife's fear of the husband's temper is competent as bearing on the defendant's motive and intent.... In the defendant's case, the evidence was admissible to show ... a bearing on his intent to kill [his wife]."

*Id.*

In the case *sub judice,* as we have seen, the evidence consisted of the July 30, 1985 physical dispute between the petitioner and the victim, testimony that the petitioner and the victim had a "stormy" relationship, and testimony from a friend of the victim concerning a fight the night before the murder in which the petitioner allegedly stated that the victim was "a dead woman." Thus, the jury heard testimony indicating that there was disharmony in the household. That evi-

dence was probative of a continuing hostility and animosity, on the part of the petitioner, toward the victim and, therefore, of a motive to murder, not simply the propensity to commit murder.[7]

■ The petitioner also claims that it was error for the trial court to admit evidence from his daughter regarding incidents in which she observed the petitioner hit the victim. Citing several out of state cases, *Barnes v. Commonwealth*, 794 S.W.2d 165 (Ky.1990); *Fields v. State*, 362 So.2d 1319, 1320 (Ala.Crim.App.1978); *Roberson v. State*, 339 So.2d 104 (Ala.1976), for the proposition that a trial judge is "without discretion to admit a statement that is so remote as to time or circumstance that its relevance or materiality must rest in conjecture and speculation," *see Roberson*, 339 So.2d at 104, the petitioner argues that the testimony was irrelevant because "[t]here was no time frame provided as to when or under what circumstances [the petitioner] hit his wife." We disagree.

Although this Court has not spoken directly on this issue, several of our sister jurisdictions have had the opportunity to do so. In *Simmons v. State*, 266 Ga. 223, 466 S.E.2d 205 (1996), the defendant was convicted of the murder of his ex-wife. Responding to the defendant's argument that evidence of prior difficulties between himself and his ex-wife was improperly admitted because they were remote and dissimilar to the murder for which he had been convicted, the Georgia Supreme Court, applying a standard of review similar to the three-pronged test articulated in *Faulkner, supra*, concluded

---

**7.** The trial court, moreover, limited the prejudicial effect of the evidence during its final charge to the jury:

> "Often times when asked about motive with respect to criminal cases motive is not an element of a crime. It need not be shown. However, you may consider the motive or lack of motive as a circumstance in the case. Presence of motive may be evidence of guilt. Absence of motive may suggest innocence. You should give the presence or the absence of motive, as the case may be, the weight that you believe it deserves."

Thus, we conclude that the judge also properly minimized any possible prejudicial effect of the evidence.

that a "lapse of eleven years between a prior difficulty and the crime charged does not necessarily render the evidence inadmissible as a matter of law." *Id.* at 225, 466 S.E.2d at 209. The lapse of time went to the weight and credibility of the testimony—not its admissibility, and was, thus, "relevant to the issues of intent, motive, scheme, and bent of mind...." *Id.*

*State v. Syriani,* 333 N.C. 350, 428 S.E.2d 118 (1993) addressed the same issue, reaching the same result. The defendant in that case was found guilty of the first-degree murder of his wife. He argued on appeal that the trial court erred when it admitted evidence showing that he had a history of physically abusing his wife and children and that such "evidence of specific instances of misconduct toward his wife and children [was offered] to prove [his] character, to show that he acted in conformity therewith, or alternatively, that the incidents were too remote in time, some more than two years prior to the killing ... to be admissible." *Id.* at 376, 428 S.E.2d at 131. The North Carolina Supreme Court held that evidence of prior bad acts, in the form of testimony by the defendant's children about "defendant's frequent arguments with, violent acts toward, separations from, reconciliations with, and threats to his wife were admissible under [North Carolina] Rule [of Evidence] 404(b) to prove ... lack of accident, intent, malice, premeditation and deliberation-notwithstanding that some of the incidents dated back to the beginning of the marriage." *Id.* at 378, 428 S.E.2d at 132. The court found support in its past decisions, in which it had held that "when a husband is charged with murdering his wife, the State may introduce evidence covering the entire period of his married life to show malice, intent and ill will towards the victim. Specifically, evidence of frequent quarrels, separations, reconciliations and ill-treatment is admissible as bearing on intent, malice, motive, premeditation and deliberation." *Id.* at 377, 428 S.E.2d at 132.

In the case *sub judice,* evidence that the petitioner hit his wife was not too remote to lack a logical relationship to motive. The victim's child at the time of her mother's death was thirteen years old. Therefore, the jury heard evidence

that, at least during the last thirteen years, events occurred which may have led to a motive to murder his wife. In our view, the incidents are logically related to motive "to show that the accused made declarations reflecting on his wife, the deceased, to show a long course of ill treatment; to show that they quarreled, [and] that he maltreated her." *Jones v. State, supra,* 182 Md. at 656–57, 35 A.2d at 918, *quoting* 1 *Warton's Criminal Evidence* § 287 at 376 (11th ed.1935). While we agree that a trial court is without discretion to admit a statement that is so remote as to time that its relevance or materiality must rest in conjecture and speculation, under the circumstances of this case, we do not believe the trial court abused its discretion.

■ Yet, even if we agreed with the petitioner that such acts are not admissible to prove motive, evidence that the petitioner hit his wife, as well as evidence of more specific physical disputes, are admissible as rebuttal evidence. In this case, the petitioner's attorney during opening statement reiterated the petitioner's sworn statement to the police that the petitioner's relationship with his wife was "great and getting better," suggesting that it was improbable that the petitioner murdered his wife. The State was entitled to rebut that evidence.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.

CATHELL, J., concurs in the result only.