25 A.3d 144

**STATE of Maryland**

v.

**Perry SIMMS a/k/a Perry Sims.**

**No. 112, Sept. Term, 2010.**

Court of Appeals of Maryland.

July 15, 2011.

that reversal is mandated because the petitioners substantially complied with the notice requirements.").

706

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Petitioner.

Scott M. Edson, Assigned Public Defender (O'Melveny & Myers LLP, Washington, D.C.; Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

GREENE, J.

In this case, we are asked to review whether it was error for a trial judge to admit a defendant's alibi disclosure notice as substantive evidence even though the defendant did not offer testimony to establish alibi, testify or put on a defense. We shall hold that admission of the alibi notice was error, and an abuse of discretion, and the error was not harmless. Thus, we affirm the judgment of the Court of Special Appeals.

## PROCEDURAL HISTORY

On August 9, 2007, Respondent Perry Simms, a/k/a Perry Sims,[1] was charged by indictment with the June 30, 2007 murder of Paul Cornish as well as various weapons charges. Pursuant to the notification requirement in Md. Rule 4–263(d)(3) (2007),[2] Respondent's defense counsel filed a timely

---

1. In this opinion, we spell Respondent's name "Sims."

2. At the time of trial, Md. Rule 4–263(d)(3) (2007) required the defense to disclose a list of potential alibi witnesses upon request by the State.

Notice of Alibi Witnesses on February 5, 2008, some six months before the August 2008 trial date. The notice listed the names and addresses of eleven individuals. Prior to admission, the notice was redacted so that it showed only the name and address of Sims's father, Perry Simms, Sr. Respondent elected a trial by jury. At trial, the State proffered to the trial judge that the alibi notice was relevant evidence because it showed Sims's consciousness of guilt in the commission of the underlying offenses. The trial judge reasoned that the notice was probative evidence of guilt when considered in conjunction with jailhouse phone calls in which the defendant and other callers referred to people who could vouch for the defendant's whereabouts on the night of the incident. The notice was admitted into evidence by the State, during its case-in-chief, through the testimony of a police officer involved in the investigation. Consequently, the notice was submitted to the jury along with transcripts of the admitted jailhouse phone calls. A Baltimore City jury convicted Respondent of manslaughter and two weapons charges. Respondent then filed a timely appeal to the Court of Special Appeals. The intermediate appellate court reversed and remanded the case for a new trial because the "circuit court erred or abused its discretion" by admitting, over objections, a redacted copy of the alibi notice and that error "was not harmless beyond a reasonable doubt." *Simms v. State*, 194 Md.App. 285, 307, 327, 4 A.3d 72, 85, 96 (2010). The State petitioned for *certiorari*, asking:

---

The current version of the rule is found, without substantive change, at Md. Rule 4–263(e)(4) (2011) in the "Criminal Causes" section of the Maryland rules addressing "pretrial procedures" particularly "Discovery in circuit court," stating:

(e) Disclosure by defense. Without the necessity of a request, the defense shall provide to the State's Attorney:

\* \* \*

(4) Alibi witnesses. If the State's Attorney has designated the time, place, and date of the alleged offense, the name and, except when the witness declines permission, the address of each person other than the defendant whom the defense intends to call as a witness to show that the defendant was not present at the time, place, or date designated by the State's Attorney. . . .

1.  Where the plain language of the alibi-notice rule does not indicate that such notices are inadmissible as a matter of law, did the Court of Special Appeals err in determining that the trial court erred in admitting the alibi notice, where Sims's defense at trial was a *de facto* alibi defense, Sims never withdrew his alibi notice, the alibi notice was redacted to eliminate all names but one, and recordings of jailhouse telephone conversations supported an inference that the alibi notice was willfully false as to one person because that person was in a different city at the time of the charged offenses?

2.  Did the Court of Special Appeals err in concluding that the alibi notice was not admissible, where an inference that the alibi notice was willfully false as to one person because that person was in a different city at the time of the charged offenses was not the only possible inference based on the record in this case? [3]

We granted the State's petition. *State v. Simms*, 417 Md. 384, 10 A.3d 199 (2010).

## FACTS

Perry Sims was arrested on July 13, 2007 in connection with a shooting death that occurred at approximately 9:00 p.m. on June 30, 2007. Sims waived his *Miranda* rights and gave a statement to Detective Diaz, in which he indicated that on the date of the crime, he was at his mother's house with his mother and two brothers until about 11 p.m. when he "went up Douglas projects." The statement, which was played for the jury, also indicated that Sims told Detective Diaz that "someone named Tim" had been shot that day, but Sims denied shooting anyone.

While Sims was in custody pending his trial date, the State recorded several telephone conversations between Sims, his

---

**3.** Citing an interest in brevity, the State condensed its questions into one within its brief, asking: "Did the trial court properly exercise its discretion in admitting the redacted alibi notice because it was relevant and probative evidence of consciousness of guilt"?

mother, his friend, and others. As discussed below, three of those phone calls were played for the jury at trial and transcripts of the calls were sent into the jury deliberation room. The defense attorney objected when the State offered for admission into evidence the three recorded telephone conversations, as well as the alibi witness disclosure list. The Court of Special Appeals summarized the following colloquy between the court and the parties concerning admissibility of the alibi notice and the jailhouse phone calls:

> In connection with the ruling on the admissibility of the recorded telephone conversations, the [trial] court also discussed the defense's alibi notice. The prosecutor advised the court that the defense had disclosed a list of "about 10" alibi witnesses, and that, in one of the recorded telephone conversations, [Sims] referred to about twenty people who saw him at a party. Referring to the alibi notice, the [trial] court asked: "Are you going to put that into evidence?" The court then said: "[I]f the alibi statement sounds to be probative, [defense counsel is] the agent of the defendant, so it's admissible against him. . . ." The [trial] court also said to the prosecutor: "[Y]ou should put the filing into evidence so that you can argue it to the jury." The following ensued:
>
>> [DEFENSE COUNSEL]: Your Honor, I would have an objection to that and ask for an opportunity to be heard—
>>
>> THE COURT: You'll be heard.
>>
>> [DEFENSE COUNSEL]:—on that collateral issue.
>>
>> THE COURT: All right. But if—well, why don't you tell me now. Why shouldn't your alibi statement—you're the agent of the defendant, why wouldn't that come in?
>>
>> [DEFENSE COUNSEL]: Your Honor, the Defense has no burden to put any defense on.
>>
>> And the State bringing up the Defense's attorney filing a notice of alibi witnesses, shifts the burden that my client then has to rebut.
>>
>> *     *     *
>>
>> THE COURT: Let me put on my Defense attorney hat for a minute. . . . [The defense attorney is] not bound to

put on an alibi defense. ... She [i.e., the defense] just has to give you warning. ... And suppose she as a careful lawyer says, all right, I better file [the alibi notice] so I have the option of using it and decides not to do it. Then what's the relevance for the State to put it in?

[PROSECUTOR]: The relevance for the State, whether she puts it in or not, is consciousness of guilt. The State's argument—

THE COURT: It could be. But how does that show consciousness of guilt? It's only consciousness of guilt if it's false. . . . The fact that she doesn't use it doesn't mean it's false. . . . The fact that she's not—how do you prove it's a false alibi. . . . At least it is an admission by counsel. . . . I mean counsel could say and the defendant could say, you know, I've got these alibi witnesses, but maybe they've got criminal records, maybe the jury won't like them, so I'm going to make a tactical decision not to put them on. And making that tactical decision should not bite them frankly. I only think it comes in if it's clear the defendant knows that he's lying.

\* \* \*

[PROSECUTOR]: Right. What I'm saying is they are putting forth alibi witnesses saying that they were at this party—

THE COURT: Was there a party to your knowledge?

[PROSECUTOR]: Okay, well, I can't say that—

THE COURT: You don't know.

[PROSECUTOR]: ... There may have been a party. I believe that there might have been—

\* \* \*

THE COURT: What else you've (sic) got that shows that he knows that it's a false alibi?

[PROSECUTOR]: All right. On the alibi, and this is during the time that the defendant is on the telephone calls, he's speaking again to his mother, and then one time also to his father. And in one conversation with his

mother, he's discussing with his mother that they have alibi witnesses, and that the defendant was at his mother's house because the father and the little brother went out of town. . . . That's why he came over for his mother's birthday party.

\*　　\*　　\*

THE COURT: How do you show it's [i.e., alibi notice] false and that he knows it's false?

[PROSECUTOR]: By his response to the statement, by the fact that he speaks to his father, by the fact that they say he's in Myrtle Beach on the phone call.

\*　　\*　　\*

THE COURT: Okay, you're telling me there's a phone call in which the defendant says father and brother were out of town?

[PROSECUTOR]: Town, right. He's talking to the mother.

THE COURT: And he says they were out of town, and then he lists those two as alibi witnesses . . . . why it matters is your proffer that there is a subsequent phone call in which he says where he's going to use two people as alibi witnesses, father and brother I think you said. And did in fact list those two people he knows were not there. Based on that proffer, if I understood you correctly, that there is a subsequent phone conversation in which he says in effect we'll use father and brother I think that subsequently helps to pull this one in.[4] . . . So let me hear from [defense counsel]. What do you want to tell us?

\*　　\*　　\*

[DEFENSE COUNSEL]: . . . The speaker who's not institutionalized [i.e., Sims's mother] says "because you

---

4. The trial judge's perception of the timing of these events is not coincident with the record because the phone calls that were admitted into evidence took place between July and October of 2007, but the alibi notice was not filed until February 5, 2008.

came home, because you're staying with your father, and your father then went out of town, your father and your little brother. That's why you was over here with me."
. . . But where it indicates that the father and the little brother were out of town. I mean where's the impeachment portion of that? . . . .

THE COURT: Okay. I hear you, but I think it's enough to let it in.

The telephone recording that the State played first was of a conversation between [Sims] and his mother on July 31, 2007. The following excerpt is relevant (emphasis added):

[SIMS]: . . . Ma' [sic] I just need everybody, Ma', that you can get Ma', (unintelligible)

[SIMS'S MOTHER]: Uh huh.

[SIMS]: And vouch for me and say the same shit, see what I'm saying?

[SIMS'S MOTHER]: Yeah I know.

[SIMS]: I told them that you know my hair was all over my head, you done my hair.

[SIMS'S MOTHER]: Uh huh.

[SIMS]: You see what I'm saying from at um what—you start doing my hair like seven o'clock but the party started at six. I been there ever since that morning. You feel me?

[SIMS'S MOTHER]: Yeah.

[SIMS]: (inaudible) you already know.

[SIMS'S MOTHER]: Because you came home, because *you was staying with your father and your father and them went out of town*—your father and your little brother—*that [sic] why you was over here with me.*

[SIMS]: Okay. Right.

[SIMS'S MOTHER]: On my birthday that's the way it went.

[SIMS]: Uh huh. That's what I'm saying right, and all, and everybody Aunt Lisa everybody you see what I'm saying?

[SIMS'S MOTHER]: Uh huh.

[SIMS]: See what I'm saying—vouch for me—everybody that was at that party.

[SIMS'S MOTHER]: Yeah.

[SIMS]: As long as I have at least about seven people, I'm good Ma' [sic] I know you can get that, you hear me?

[SIMS'S MOTHER]: I know baby and I know.

The State next played a telephone conversation between [Sims] and his mother on July 15, 2007. [Sims] told his mother that "they saying I supposed to did that at 10:10." He also said that at "10:10 Ma and I ain't leave, I ain't leave outside really about up Douglas until like 11 o'clock any mu [sic], any way, you see what I'm saying. You did my hair and everything, my hair was all over my head, come on now, Ma."

The third recording concerned a telephone conversation between [Sims] and Tim on July 18, 2007. [Sims] stated:

Right—So they—man—they ain't got nothing on me, man, they ain't got nothing, man. All it is, somebody, somebody snitching on me, though, (unintelligible). One of them . . . got mad and start (unintelligible). (Unintelligible) when I get my motions and all that, you feel me? . . . Right, right, right, right. Somebody ratting hard, you hear me, something terrible. . . . .

During the phone call, Tim indicated that he was with a "couple" of other people, and [Sims] asked Tim to put one of those persons on the phone. [Sims] told that individual:

I got alibis and everything, saying I was at the house the whole time, feel me, this and that.

\*       \*       \*

Yo, you know the whole time, the thing was suppose [sic] to went down my mother birthday, you hear me, so where as though I gotta like 20, 25 people already signed papers and everything saying I was in the house whole time, man. You feel me?

The State showed [its witness, investigating police officer] Detective Diaz State's Exhibit No. 30, which was a redacted version of the alibi notice that [Sims's] attorney had submitted on February 5, 2008. As noted, the alibi notice initially contained the names of eleven alibi witnesses. The redacted version contained only the name of appellant's father, and was in the form of a pleading, signed by appellant's attorney. Captioned "NOTICE OF ALIBI WITNESS," it stated: "Pursuant to Maryland Rules of Procedure, 4–263(d)(3), Defendant is disclosing the name and address of the following witness:" The Notice listed "Perry Simms, Sr." along with his address.

The following testimony is pertinent:

[PROSECUTOR]: During the investigation and approaching the trial date in this case, did there come a time that you received any documentation relating to Notice of an Alibi Witness on behalf of the defendant?

[DETECTIVE DIAZ]: Yes ma'am.

[PROSECUTOR]: When you received the document that I'm showing you, State's 30, does that document—what it that—what is the name on State's 30 that was disclosed on behalf of the defendant as an alibi witness?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Basis.

Defense counsel sought to incorporate her earlier arguments. At the bench, the following occurred:

[DEFENSE COUNSEL]: Okay. Your Honor, my objection is that the document [i.e., the redacted alibi notice], in and of itself, is tantamount to a pleading. . . . It's not evidence in this case.

\*　　\*　　\*

THE COURT: Pleadings can be if there are admissions.

[DEFENSE COUNSEL]: But they're—it's prepared by counsel, it's not. . . .

THE COURT: It's an agent of a defendant.

[DEFENSE COUNSEL]: That's correct and I just want it placed on the record so the Court knows. As I indicated previously, Mr. Sims was represented by another attorney. I picked up his case after [he] had been charged, had his indictment, had been arraigned. I did not enter my appearance in this case until January and as his attorney I felt duty bound to turn over whatever information I had.

THE COURT: Understood.

[DEFENSE COUNSEL]: And it's not necessarily proper to assume the information I had came from the defendant and entering this Notice of Alibi Witness into evidence, I believe creates that aura that it came from him.[5]

THE COURT: On a personal level, I'm sympathetic ... but I, as I understand the law, an emaciate [sic] pleading can be an admission and when you enter into a pleading on his behalf, it is—can be an admission against him. The record should reflect that Exhibit 30 has been redacted so that only one name of the, I don't know, dozen that you submitted, is going to the jury and the reason and that one name is Perry Simms, Senior—. * * * [A]nd the only reason I'm letting it in is because of the taped conversation which he says his father was out of town. I would not let in other names for all kinds of reasons so your objection's noted, appreciated, overruled.

The testimony resumed, as follows:

[PROSECUTOR]: [W]hose name was provided as an alibi witness on behalf of the defendant?

[DETECTIVE DIAZ]: I received Senior, Perry Simms, Senior.

---

5. There has been no argument or reference in the record indicating how the names were affixed to the Notice of Alibi Witnesses. For instance, we do not know if the defendant identified potential alibi witnesses to either his first or second attorney, or if one of the attorneys independently investigated the incident and then independently developed the list.

The State then offered State's Exhibit 30 into evidence. [Defense counsel] again objected, the court again overruled the objection, and the redacted alibi notice was admitted.

After the prosecution rested, appellant rested. He did not testify or call any defense witnesses.

The court and counsel discussed jury instructions, initially in chambers and then on the record.[6] In terms of argument as to the issue of alibi witnesses, the court limited the State to arguing only about appellant's mother and father.[7]

Immediately before giving "formal instructions on the law," the court announced to the jury a "preliminary instruction on the evidence." It said:

Ladies and gentlemen, there w[ere] some tapes played for you recently during the trial. And there w[ere] some references there to potential alibi witnesses, and I want to tell you to strike from your mind any references about alibi witnesses except as the testimony concerned the defendant's father and mother. Other than father and mother, you should strike it from the record and do not consider it.

In closing, defense counsel argued, in part:

Mr. Simms gave a statement to Detective Diaz, and he told him I wasn't there. Not self defense. I had a gun, you had a gun, there are witnesses, weapons, two of them, one of me. He never said it was self defense. He said I wasn't there. It wasn't me. Were you listening? It has nothing to do with self defense.[8]

---

6. Sims's counsel unsuccessfully moved for a mistrial, apparently based on the alibi issue.

7. The court also determined to excise references to other witnesses in the tapes of the recorded telephone conversations, in the event that the jury requested the tapes.

8. Neither the State nor the defense discussed the issue of alibi in closing. Moreover, the court did not propound a jury instruction as to an alibi witness.

*Simms,* 194 Md.App. at 298–306, 4 A.3d at 79–84 (footnotes in original) (emphasis in original).

The trial judge accepted the State's argument that the redacted notice was probative on the issue of defendant's "consciousness of guilt" [9] when coupled with the phone calls implicating a false alibi. The notice was admitted during the direct examination of Detective Diaz, a State's witness, and circulated to the jury. At trial, the defense did not call an alibi witness, it did not assert in its opening statement that the defendant had an alibi, and it did not request an alibi jury instruction. The defense did explicitly refer to the alibi notice in its closing argument asserting that the State could have investigated the alibi witness but chose not to and the defense chose not to put him on the stand. The court did not give an alibi instruction or a "false exculpatory statement instruction," [10] even though it suggested an example of the latter to the prosecutor.

## I. Admissibility of the Redacted Alibi Notice

At trial, the State proffered that the alibi notice, when considered in conjunction with three admitted jailhouse phone calls, was admissible because it showed Sims's "consciousness

---

9. We have recognized "consciousness of guilt" evidence as a kind of circumstantial evidence. *Thomas v. State,* 372 Md. 342, 812 A.2d 1050 (2002) (*Thomas I*) ("A person's behavior after the commission of a crime may be admissible as circumstantial evidence from which guilt may be inferred."), and cases cited therein.

10. During discussion between the trial judge and the attorneys, the judge referenced an instruction "not yet approved" but that he apparently considered relevant to the State's theory that the alibi was falsified. The judge suggested to the State's Attorney:

You may want to take a look at either in—I've got Fourth Circuit instructions. But a standard federal instruction is what is known as the false exculpatory statement instruction which basically paraphrasing says that if a defendant gives a story—and *Horn* I think is the—I have to search for federal Fourth Circuit instructions—but it's a standard federal instruction that if the jury finds the defendant gave a false exculpatory story, they can consider that as evidence of guilt. It has not—it's not in the (indiscernible) book. I've submitted a draft to (indiscernible), but it hasn't been acted on yet. You may want to decide if you want to try for that or not.

of guilt," i.e., it was circumstantial evidence of his complicity in the criminal offenses.[11]  Before the Court of Special Appeals, the State asserted alternative reasons to uphold the admission of the notice, including: use of the notice to impeach the defendant; use as a party admission; use to counter the defendant's *de facto* alibi defense; and use because the defendant did not withdraw the notice.  Regarding the "consciousness of guilt" theory, the Court of Special Appeals held that the redacted alibi notice was inadmissible at trial because "the State's theory of falsity was not clear from the evidence." *Simms,* 194 Md.App. at 316, 4 A.3d at 90.  Particularly, the intermediate appellate court determined that because the "evidence that [Sims's] father was out of town arguably supported [Sims's] alibi. . . . [Sims's] identification of his father as an alibi witness was not inconsistent with his pretrial claim that he was not at the scene of the shooting." *Simms,* 194 Md.App. at 316, 4 A.3d at 90.  The court also rejected the State's contention that the notice could be used to impeach because Sims "neither testified nor called any witnesses." *Simms,* 194 Md.App. at 313, 4 A.3d at 88.  Additionally, the court disagreed that the notice was an admissible pleading because it contained party admissions, or because Sims did not

---

11.  We noted in *Decker v. State,* 408 Md. 631, 971 A.2d 268 (2009) that
> [c]onsciousness of guilt evidence can take various forms, including "flight after a crime, escape from confinement, use of a false name, and destruction or concealment of evidence." *Thomas [I ],* 372 Md. at 351, 812 A.2d at 1055; *accord Sorrell [v. State ],* 315 Md. [224,] 228, 554 A.2d [352,] 354 [ (1989) ] (noting that any flight from justice, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, which takes place after the commission of a crime, is admissible as evidence of consciousness of guilt).  The evidence need not be contemporaneous with the crime to be evidence of the defendant's consciousness of guilt.  *See, e.g., Sorrell,* 315 Md. at 226–27, 554 A.2d at 352–53 (holding that the defendant's failure to return from a lunch recess during his trial supported a jury instruction on "flight").

> *Decker,* 408 Md. at 640–641, 971 A.2d at 274.  We have upheld the admission of "consciousness of guilt" evidence on numerous occasions. *See Sorrell,* 315 Md. at 227–28, 554 A.2d at 353, and cases cited therein; *see also Thomas v. State,* 397 Md. 557, 919 A.2d 49 (2007) (*Thomas II* ) (holding that evidence regarding refusal of a blood sample was relevant and admissible).

act to withdraw it. *Simms,* 194 Md.App. at 315, 318, 4 A.3d at 89, 91.

Before this Court, the State framed its petition for *certiorari* broadly requesting review of the admissibility of the notice as "consciousness of guilt evidence" and for purposes of impeachment because Sims allegedly mounted a *de facto* alibi defense and did not withdraw the notice.[12] We affirm the judgment of the Court of Special Appeals and similarly hold that the notice could not be used to impeach nor to rebut an alleged *de facto* alibi defense, that failure to withdraw the notice does not necessarily open the door for admission of an alibi notice, and that the notice was not admissible "consciousness of guilt" evidence because it was irrelevant to the matter in dispute.

## A. The Alibi Notice Requirement Under Maryland Law

In criminal cases, the State must prove "criminal agency (including [the defendant's] presence at the scene where pertinent)" beyond a reasonable doubt. *Schmitt v. State,* 140 Md.App. 1, 30, 779 A.2d 1004, 1020 (2001). A criminal defendant may choose to present an alibi defense in order to controvert the State's evidence of criminal agency, i.e., that the defendant was at the place and time that the criminal incident occurred. *See Grandison v. State,* 390 Md. 412, 439, 889 A.2d 366, 382 (2005) (noting that "alibi negates criminal agency") (quoting *Borchardt v. State,* 367 Md. 91, 786 A.2d 631 (2001)). A defendant may also be entitled to a jury instruction on alibi, even if he, himself, does not generate the issue of an alibi at trial. *See Robertson v. State,* 112 Md.App. 366, 382, 685 A.2d 805, 810 (1996) (noting that an alibi defense is not an affirmative defense and "the defendant, himself, need not introduce alibi evidence in order to generate the basis for an instruction on the issue.").

---

12. Neither the State nor Sims have proffered our cases on "consciousness of guilt" evidence to support their arguments on the questions presented. Nonetheless, we shall draw from our relevant jurisprudence to answer Petitioner's questions.

In Maryland, as in "the federal system and more than forty states," a defendant must "give advance notice of his [or her] intent to raise an alibi defense." *Simms,* 194 Md.App. at 308, 4 A.3d at 85 (quoting Wayne R. LaFave et al., Criminal Procedure § 20.5(b) (5th ed.2009)). At the time of the incident, Maryland Rule 4–263(d)(3) [13] required that the defense disclose the names and addresses of anyone other than the defendant who the defense intended to call to "show that the defendant was not present at the time, place, and date designated by the State...." In *Taliaferro v. State,* 295 Md. 376, 456 A.2d 29 (1983), we recognized that the requirement of advance notice of potential alibi witnesses to the State serves four purposes, including: preventing surprise; deterring false alibis because the State can investigate the witnesses prior to trial; avoiding delay because meritorious alibis warrant dismissal and the opportunity for pre-trial investigation avoids continuances; and affording more respect to the alibis actually presented at trial. *Taliaferro,* 295 Md. at 385–86, 456 A.2d at 34–35 (affirming the trial judge's decision to exclude an alibi witness not disclosed pretrial) (quoting Epstein, *Advance Notice of Alibi,* 55 J.Crim. L., Criminology & Police Sci. 29, 31–32 (1964)). An alibi notice is, in fact, a tool of discovery that is unique to criminal cases and the beneficiary of the required rule is clearly the State. *Accord Simms,* 194 Md.App. at 313–314, 4 A.3d at 88 ("We agree with [Sims] that 'introducing an alibi notice against a non-testifying defendant who calls no witnesses impermissibly converts a discovery tool into a means of extracting admissions' from a defendant").

Petitioner asserts that this case presents an exceptional circumstance because a generally inadmissible alibi notice should be admissible "where there is evidence that an alibi notice is willfully false, and the defendant did not affirmatively act to withdraw the notice ... particularly when the defendant presents a *de facto* alibi defense." Respondent counters that evidence of the alibi notice was not legally relevant to estab-

---

**13.** See footnote 2 for text of Rule 4–263(e)(4), which is the current version of the alibi notice rule.

lish the underlying crime because inferences other than intentional falsity of the notice could be drawn, for instance that the witness could have confirmed the Respondent's whereabouts the night of the incident. Additionally, Respondent argues that any probative value of the redacted notice was outweighed by the risk that the notice shifted the burden of proof to Sims to present an alibi defense. As the Court of Special Appeals noted, this Court has not previously addressed the permissible use of alibi notices during criminal trials, and the notice rule, itself, is silent as to admissibility. *Simms,* 194 Md.App. at 311, 4 A.3d at 87.

## B.  Standard of Review for Admissibility of Evidence

Trial judges generally have "wide discretion" when weighing the relevancy of evidence. *Young v. State,* 370 Md. 686, 720, 806 A.2d 233, 253 (2002) ("Trial courts have wide discretion in determining the relevance of evidence."); *accord Schmitt,* 140 Md.App. at 17, 779 A.2d at 1013 (noting that "with respect to evidentiary rulings on admissibility generally and rulings with respect to relevance specifically, the trial judge is vested with wide, wide discretion"). While trial judges are vested with discretion in weighing relevancy in light of unfairness or efficiency considerations, trial judges do not have discretion to admit irrelevant evidence. *See Pearson v. State,* 182 Md. 1, 13, 31 A.2d 624, 629 (1943) (noting that "the rule [of discretion] will not be extended to facts obviously irrelevant as well as prejudicial to the defendant"). In *Ruffin Hotel Corp. of Md. v. Gasper,* 418 Md. 594, 17 A.3d 676 (2011), we explained the standards by which we review the admission, or exclusion, of evidence, stating:

It is frequently stated that the issue of whether a particular item of evidence should be admitted or excluded "is committed to the considerable and sound discretion of the trial court," and that the "abuse of discretion" standard of review is applicable to "the trial court's determination of relevancy." *See e.g. Merzbacher v. State,* 346 Md. 391, 404–05, 697 A.2d 432, 439 (1997). Maryland Rule 5–402, however, makes it clear that the trial court does not have discretion to admit

irrelevant evidence.... [T]he "de novo" standard of review is applicable to the trial judge's conclusion of law that the evidence at issue is or is not "of consequence to the determination of the action." *Parker v. State*, 408 Md. 428, 437, 970 A.2d 320, 325 (2009), (citations omitted) (quoting *J.L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 92, 792 A.2d 288, 300 (2002)).

*Ruffin*, 418 Md. at 619, 17 A.3d at 690–91. Thus, we must consider first, whether the evidence is legally relevant, and, if relevant, then whether the evidence is inadmissible because its probative value is outweighed by the danger of unfair prejudice, or other countervailing concerns as outlined in Maryland Rule 5–403. *See Thomas v. State*, 372 Md. 342, 350, 812 A.2d 1050, 1055 (2002) (*Thomas I*) ("The fundamental test in assessing admissibility is relevance."). During the first consideration, we test for legal error, while the second consideration requires review of the trial judge's discretionary weighing and is thus tested for abuse of that discretion. *See J.L. Matthews*, 368 Md. at 92, 792 A.2d at 300, n. 18 ("Although at first glance such a determination may appear to be a legal conclusion, at its core it is based on a trial judge's independent weighing of the probative value of the evidence against its harmful effects. As such, it is subject to the abuse of discretion standard.").

## C.   Irrelevance of the Redacted Alibi Notice to a Material Fact in Issue

Maryland Rule 5–401 defines "relevant evidence" as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401 (2011). Irrelevant evidence is inadmissible. *See* Md. Rule 5–402; *see e.g., Simmons v. State*, 392 Md. 279, 300, 896 A.2d 1023, 1035 (2006) (holding that a trial judge's prevention of an irrelevant line of questioning regarding the intention of a potential witness to invoke her Fifth Amendment privilege was correct). In *Thomas I,* we stated:

A person's post-crime behavior often is considered relevant to the question of guilt because the particular behavior provides clues to the person's state of mind. The reason why a person's post-crime state of mind may be relevant is because, as Professor Wigmore suggested, the commission of a crime can be expected to leave some mental traces on the criminal.

372 Md. at 352, 812 A.2d at 1056 (citing 1 J. Wigmore, *Evidence* § 173, at 632 (3d ed. 1940)), *accord Decker,* 408 Md. at 641, 971 A.2d at 274. Speaking specifically to the issue of relevancy, we have also stated that "[a]pplying our accepted test of relevancy, 'guilty behavior should be admissible to prove guilt if we can say that the fact that the accused behaved in a particular way renders more probable the fact of [his or her] guilt.'" *Thomas I,* 372 Md. at 352, 812 A.2d at 1056 (quoting Andrew Palmer, *Guilt and the Consciousness of Guilt: The Use of Lies, Flight and Other 'Guilty Behavior' in the Investigation and Prosecution of Crimes,* 21 Melb. U.L.Rev. 95, 98 (1997)); *accord Decker,* 408 Md. at 641, 971 A.2d at 274 (citation omitted). Thus, the relevance of the alibi notice depends upon whether the conduct of naming Sims's father as a potential alibi witness makes Sims's guilt of the murder and related weapons charges more probable.

The record indicates that the trial judge first asserted that "the alibi statement sounds to be probative ... so it's admissible against him." Upon objection by defense counsel, the trial judge then pressed the State's Attorney to show "what's the relevance for the State to put it in?" The State responded that "[t]he relevance for the State, whether she puts [the alibi defense] in or not, is consciousness of guilt." The judge responded, "[i]t's only consciousness of guilt if it's false.... The fact that [defense counsel] doesn't use it doesn't mean it's false." The judge then asked the State to identify evidence that the "defendant knows that it's a false alibi." Upon the State's description of how particular proffered jailhouse phone calls suggest that the defendant listed a potential alibi witness who was identified during the phone call as being out of town at the pertinent time, the judge concluded "I see

why it's probative. And if you connect it up with a later phone call where the father and brother are out of town, and he says he knows they're out of town." Apparently, the trial judge assumed that the alibi notice was relevant to the issues in the case.

■ It is true that relevance is generally a low bar, but it is a legal requirement nonetheless. We have described relevance by stating:

To be relevant, it is not necessary that evidence of this nature conclusively establish guilt. The proper inquiry is whether the evidence *could* support an inference that the defendant's conduct demonstrates a consciousness of guilt. If so, the evidence is relevant and generally admissible.

*Thomas v. State*, 397 Md. 557, 577, 919 A.2d 49, 61 (2007) (*Thomas II* ) (quoting *Thomas v. State*, 168 Md.App. 682, 712, 899 A.2d 170, 188 (2006)) (emphasis in original) (internal citations omitted). The redacted alibi notice was, in fact, not relevant because it did not " 'render[ ] more probable the fact of [Sims's] guilt.' " *Thomas I*, 372 Md. at 352, 812 A.2d at 1056. The State has not indicated which "fact that is of consequence to the determination of the action" is arguably made "more or less probable" by admission of the notice into evidence. In our view, the State, in effect, manufactured an issue in the case, i.e., it presented defendant's potential alibi defense prospectively, and then introduced evidence to undermine the credibility of the defense. The strategy might have been potentially appropriate in a rebuttal case after the defendant's actual testimony and use of his alibi, but it was not appropriate here where the defendant did not testify or introduce any evidence to support an alibi defense. The Maryland Rules require that a criminal defendant file a Notice of Alibi Witnesses in order to preserve the right to present alibi witnesses that may negate the State's evidence linking the defendant to the time and place of the alleged crime. In a criminal case, the State is not permitted to use the defendant's compliance with the mandatory notice requirement as affirmative evidence of guilt or to prove the crimes charged. Thus, the trial

judge erred in determining that the notice was admissible relevant evidence.

### D. The Insufficient Probative Value of the Redacted Alibi Notice

██ Even if the notice was relevant to the ultimate question of guilt, which we hold it was not because it did not render Sims's guilty conscience more probable, the trial judge had the discretion to bar the evidence because it was unfairly prejudicial to the defendant and misleading to the jury. *See* Md. Rule 5–403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). We have reversed convictions where alleged "consciousness of guilt" evidence was erroneously admitted. *See, e.g., Bedford v. State*, 317 Md. 659, 668, 566 A.2d 111, 115 (1989) (holding that "possession of the wire is so equivocal . . . its admission into evidence was more prejudicial to Bedford than probative of an intent to escape and should have been excluded."); *Thomas I*, 372 Md. at 357–58, 812 A.2d at 1058–59 (holding that the trial court committed reversible error by admitting evidence of defendant's refusal to give the police a blood sample where there was no connection between the consciousness of guilt evidence and guilt of the crime charged); *Snyder v. State*, 361 Md. 580, 596, 762 A.2d 125, 134 (2000) (holding that evidence that the defendant had not contacted the police who were investigating his wife's murder was inadmissible because it was "too ambiguous and equivocal" as evidence of consciousness of guilt).

Because "consciousness of guilt" evidence can be unfairly prejudicial to the defendant, we have outlined the manner by which a trial judge should employ discretion when considering the admissibility of such evidence. For instance, in *Bedford* we stated:

> The authorities are uniform that evidence of a consciousness of guilt is generally circumstantial and should be more

probative on the issue of ultimate guilt than prejudicial to the defendant. McCormick, [McCormick on] Evidence § 271 [ (3d. ed. 1984) ]; *see* Fed.R.Evid. 403. If the judge finds that the proposed material is likely to lead a reasonable jury to infer the defendant's guilt without causing him substantial prejudice, then the judge may allow the jury to consider the evidence in reaching a verdict as to the charged offense. If, however, the inference as to ultimate guilt is weak and the circumstantial evidence merely tends to create in the minds of jurors the impression that the defendant is of questionable character and has a propensity for bad acts and probably acted accordingly on the charged occasion, then the evidence should be excluded.

*Bedford,* 317 Md. at 667–68, 566 A.2d at 115 (holding that it was reversible error to admit into evidence a four inch wire that prison guards discovered during a strip search in order to show that Bedford had attempted to escape from custody). We have, additionally, prescribed a four-prong test to guide review of the probative value of the evidence, stating:

the probative value of the evidence 'depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from the flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.'

*Decker,* 408 Md. at 642, 971 A.2d at 275 (quoting *Thomas I,* 372 Md. at 352, 812 A.2d at 1056–57) (adopting the Fifth Circuit's test in *United States v. Myers,* 550 F.2d 1036 (5th Cir.1977)) (finding all four sub-inferences supported by evidence and, so, the trial court's admission of evidence of defendant's "departure from the courthouse on the previously scheduled trial date was relevant evidence"); *see also Snyder,* 361 Md. at 596, 762 A.2d at 134 (noting that the inference of consciousness of guilt requires four sub-inferences, which must all have evidentiary support). For instance, in *Thomas I,* we held that "[t]he jury should not have been permitted to draw an inference of guilt from petitioner's conduct unless the

conduct was related to the murder investigation. Because there is no evidence connecting petitioner's refusal to allow the officers to draw his blood and a consciousness of guilt of the murder ... the evidence of defendant's conduct lacks probative value and was inadmissible." *Thomas I,* 372 Md. at 358, 812 A.2d at 1059 (reversing defendant's conviction and remanding for a new trial, which was conducted and the second conviction affirmed upon satisfaction of all four prongs in *Thomas II* ).

Based on the *Myers* test, adopted in *Thomas I* and subsequently applied in *Decker,* the probative value, and attendant admissibility, of the redacted alibi notice as circumstantial evidence of Sims's guilt of the crimes charged depends on whether the following four inferences can be drawn: (1) from his conduct naming his father as a potential alibi witness, a desire to invoke a false alibi defense; (2) from a desire to invoke a false alibi defense, a consciousness of guilt; (3) from a consciousness of guilt, a consciousness of guilt of the murder of Paul Cornish; and (4) from a consciousness of guilt of the murder of Paul Cornish, actual guilt of the murder and related weapons charges. *See e.g., Decker,* 408 Md. at 642, 971 A.2d at 275 (applying these four factors to evidence of flight from prosecution); *Thomas I,* 372 Md. at 356, 812 A.2d at 1058 (applying the four factors to evidence of refusal to take a blood test and holding that third inference was lacking); *Thomas II,* 397 Md. at 576–77, 919 A.2d at 60–61 (applying the four factors as in *Thomas I* but finding all four factors satisfied); *Snyder,* 361 Md. at 596, 762 A.2d at 134 (applying similar factors to evidence that the husband of the murdered wife failed to inquire about the progress of the investigation).

In *Myers,* the Fifth Circuit determined that a flight instruction should not have been given because the first and third inferences could not be reasonably drawn. In that case, a defendant challenged a jury instruction that addressed evidence of intentional flight subsequent to a crime and instructed the jury that they could consider whether such evidence indicated a consciousness of guilt as well as how much significance such conduct had on the ultimate question of guilt for

the crime alleged. The defendant argued that "the district court erred in instructing the jury concerning the proper use of evidence indicating that he fled from FBI agents on two occasions [once in Florida, the other time in California] subsequent to the commission of the robbery" in Florida. *Myers*, 550 F.2d at 1048. The first inference could not be drawn because the allegedly guilty conduct, i.e., the flight from federal agents, was "without support in the record" and "for a jury to find that Myers fled from federal agents prior to his arrest in California would require conjecture and speculation." *Myers*, 550 F.2d at 1049–50 (noting that the only evidence of flight was presented by one of the arresting officers but that the officer's testimony was "inconclusive"). The third inference could not be reasonably drawn because "the hypothesis that he fled solely because he felt guilty about [a similar but separate, alleged crime] cannot be ruled out." *Myers*, 550 F.2d at 1050 (holding that because Myers allegedly committed two bank robberies, the first in Florida and subsequent robbery in Pennsylvania, but was charged with only the Florida robbery at the time that he allegedly fled, "no inference that he is guilty of the Florida robbery [and not just the Pennsylvania robbery] is possible"). Because "the hypothesis that he fled solely because he felt guilty about the Pennsylvania robbery [could not] be ruled out[,]" the court determined it was error to instruct the jury that they could draw an inference of guilt for the Florida robbery from the flight evidence.

Similarly here, the redacted alibi notice was "too ambiguous and equivocal" to support the inferences connecting Sims's pre-trial conduct to the actual crimes. As the Court of Special Appeals noted, the notice and phone calls may support inferences other than an intent to create false exculpatory evidence because "[Sims's] identification of his father as an alibi witness was not inconsistent with his pretrial claim that he was not at the scene of the shooting[,]" and "evidence that [Sims's] father was out of town arguably supported [Sims's] alibi." *Simms*, 194 Md.App. at 317, 4 A.3d at 90. In our view, a redacted alibi notice is not analogous to other types of admissible "conscious-

ness of guilt" evidence such as, "flight after a crime, escape from confinement, use of a false name, and destruction or concealment of evidence." *Decker*, 408 Md. at 640, 971 A.2d at 274 (quoting *Thomas I*, 372 Md. at 351, 812 A.2d at 1055) (citing *Sorrell v. State*, 315 Md. 224, 228, 554 A.2d 352, 354 (1989)). Any inference of consciousness of guilt requires a presumption that Sims intentionally falsified the notice and supplied the name of his father so that it could be added to the list, and that the phone call to his mother unequivocally shows that the father would have been unable to testify as an alibi witness. This chain involves the kind of speculation that removes the notice from the sphere of circumstantial evidence that we have previously allowed as probative evidence of guilty behavior. *Cf. Decker*, 408 Md. at 649, 971 A.2d at 279; *Thomas II*, 397 Md. at 576–77, 919 A.2d at 60–61; *Whittlesey v. State*, 340 Md. 30, 62–65, 665 A.2d 223, 239–40 (1995); *Sorrell*, 315 Md. at 227–28, 554 A.2d at 353; *Hunt v. State*, 312 Md. 494, 508–09, 540 A.2d 1125, 1132 (1988); *Davis v. State*, 237 Md. 97, 105–106, 205 A.2d 254, 259 (1964), cert. denied, 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); *Westcoat v. State*, 231 Md. 364, 368, 190 A.2d 544, 546 (1963).

Additionally, the redacted alibi notice should not have been admitted because, at best, the admission of the evidence invited the jury to speculate that Sims was guilty of the crimes because he could have put forth an alibi defense by calling the alibi witness listed on the notice, but did not. *See e.g., Snyder*, 361 Md. at 596, 762 A.2d at 134 (reasoning that the evidence of the defendant's failure to inquire about the progress of the investigation of his wife's murder invited the jury to speculate that because the defendant did not presumably love his wife that, as a consequence, their relationship was connected to her murder). In *Snyder*, we held that the lack of inquiry evidence produced "assumptions and speculations [that] lack[ed] probative value" and that the State had not produced evidence linking the failure to inquire specifically to the consciousness of guilt of the defendant. *Snyder*, 361 Md. at 596, 762 A.2d at 134. Here, we hold that the "inference as to ultimate guilt is weak and the circumstantial evidence merely tends to create

in the minds of jurors the impression that the defendant is of questionable character and has a propensity for bad acts and probably acted accordingly on the charged occasion," and as such the evidence should have been excluded. *Bedford,* 317 Md. at 668, 566 A.2d at 115.

Even if the alibi notice was relevant to the ultimate question of guilt, which we hold it was not because it did not render Sims's guilt more probable, its probative value was substantially outweighed by the danger of unfair prejudice. *See* Md. Rule 5-403. We do not know why Sims did not present an alibi defense, and the answer, at any rate, would be inconsequential because a defendant is under no compulsion to testify or to defend his innocence. *See Brogden v. State,* 384 Md. 631, 649, 866 A.2d 129, 139 (2005) ("[P]etitioner did not put on any evidence at trial in his defense—he merely relied on a presumption of innocence, which he unquestionably is entitled to do."); *see also* Article 22 of the Maryland Declaration of Rights ("That no man ought to be compelled to give evidence against himself in a criminal case."); *see also* Md. Code (2006 Repl.Vol.), § 9-107 of the Courts and Judicial Proceedings Article ("A person may not be compelled to testify in violation of his privilege against self incrimination."). Moreover, because the evidence was not properly admitted, it was not incumbent upon Sims to refute the State's assertion that his alibi notice indicated guilt of the underlying crimes. *Cf. Decker,* 408 Md. at 648, 971 A.2d at 278 (concluding that Defendant "offered no evidence at trial to refute the inference that he fled the courthouse on the previous trial date to avoid prosecution") (citing *Thomas II,* 397 Md. at 578, 919 A.2d at 62 (noting that defendant "had the opportunity at trial to offer alternative theories explaining his resistance to the blood test, and the record is completely devoid of any such evidence.")); *accord Thompson v. State,* 393 Md. 291, 315, 901 A.2d 208, 222 (2006) (stating that if defendant can present an innocent explanation for the conduct that "does not risk prejudicing the jury against him," he is expected to do so). The admission of the alibi notice into evidence unfairly prejudiced the defendant by inviting the jury to speculate that the defendant had

concocted a false alibi in order to conceal his guilt of the alleged crimes and the only party to generate the issue of alibi in the case was the State.

## II. Petitioner's Alternative Grounds for Admissibility of the Notice

Petitioner maintains, alternatively, that the notice was admissible because Respondent presented a *de facto* alibi defense when defense counsel's closing argument referred to Sims's prior exculpatory statement given to Detective Diaz. Defense counsel stated:

> Mr. Simms gave a statement to Detective Diaz, and he told him I wasn't there. Not self defense. I had a gun, you had a gun, here are witnesses, weapons, two of them, one of me. He never said it was self defense. He said I wasn't there. It wasn't me. Were you listening? It has nothing to do with self defense.[14]

The Court of Special Appeals rejected this argument, and so shall we. *Simms*, 194 Md.App. at 316, 4 A.3d at 90. (rejecting "the State's contention that it was entitled to use the alibi notice because Sims is the one who 'essentially' put forth an alibi defense, notwithstanding his failure to present a defense case."). Defense counsel did not refer to an alibi during her opening statement to the jury, the defendant did not testify, nor did he call any witnesses or present any evidence on his behalf. Certainly, the defendant is entitled to respond to the

---

**14.** Defense counsel also explicitly mentioned the alibi notice in closing argument stating:

The State wants to point to the fact that Mr. Simms—that I filed a notice saying that Mr. [Perry] Simms[, Sr.]—notifying the State was a potential alibi witness. And that in his phone call talking to his mother, his mother says your father and your brother were out of town. She wants to direct you to that as if it has some meaning. If it had some meaning, you tell me why this detective whose job it is to investigate this case never spoke to the man. He doesn't know whether or not that man could testify [to or about] anything with regard to his gun. It could be that he spoke to his son and doesn't know what time it was. And I chose not to put him up there to say that. We don't know what it is because he didn't bother to ask and neither did she.

State's evidence in its closing argument. *Mitchell v. State,* 408 Md. 368, 380, 969 A.2d 989, 996–97 (2009) (quoting *Wilhelm v. State,* 272 Md. 404, 412, 326 A.2d 707, 714 (1974) (describing the wide range afforded counsel in closing argument)). Defense counsel's reference to Sims's pre-trial statement to Detective Diaz, along with the closing argument, did not, as the State asserts, "manifest[ ] a commitment to [Sims's] alibi defense ... well after the State introduced the evidence." The State introduced Sims's statement to Detective Diaz in order to lay a foundation for admission of the redacted alibi notice and to support its theory of falsity and consciousness of guilt. Subsequently, in our view, defense counsel attempted to negate the potential inference by the jury that either the defendant lied about having an alibi because he did not present an alibi defense or, as is more likely given the entirety of the statement, to refute the suggestion that the defendant was relying on a self-defense argument.

■ The State argues that the fact of mentioning the pre-trial statement made by Sims to Detective Diaz commits Sims to a *de facto* alibi defense, which in turn justifies the State's admission of the alibi notice. The Court of Special Appeals pierced the State's reasoning stating:

> In effect, the State's argument is tantamount to bootstrapping. It relies on evidence it introduced against [Sims] to establish its claim that [Sims] had an alibi defense, and it then argued that it was entitled to refute that defense by use of [Sims]'s pretrial alibi notice.

*Simms,* 194 Md.App. at 317–18, 4 A.3d at 91. The State may not manufacture evidence. The State may not commit the defendant to an alibi defense and then imply that because the alibi is untenable, i.e., false, that the defendant must be guilty of the underlying crime.

■ Additionally, the Court of Special Appeals recognized that "the 'debate' concerning use of an alibi notice for impeachment 'is not implicated here,' because [Sims] never testified nor called any witnesses." *Simms,* 194 Md.App. at

313, 4 A.3d at 88. In this Court, as in the Court of Special Appeals, the State advances an argument that it did not make at trial, which is that the purpose of the allegedly false alibi notice was to impeach Sims's statement to Detective Diaz that he was not present at the time and place of the crime. "The purpose of impeachment evidence is not to establish guilt, but to attack the credibility of a witness who has offered detrimental testimony." *Stewart v. State,* 342 Md. 230, 242, 674 A.2d 944, 950 (1996); *see also Bradley v. State,* 333 Md. 593, 605–06, 636 A.2d 999, 1005 (1994) ("Impeachment" is "a shield" that "protects a party from unfavorable testimony," not "a sword to place otherwise inadmissible evidence before the jury"). Sims did not testify, nor did his exculpatory statement to the police following his arrest convert him into a State's witness. Thus, the State is not entitled to assert that the alibi notice was offered to impeach Sims's statement to Detective Diaz. *See Spence v. State,* 321 Md. 526, 531–32, 583 A.2d 715, 717–18 (1991) (holding that the State may not introduce testimony solely to impeach it).

■ Finally, the State has argued that the Court of Special Appeals erred in rejecting its contention that because Sims did not withdraw his alibi notice it was admissible evidence. *Simms,* 194 Md.App. at 318, 4 A.3d at 91. The State has mentioned numerous jurisdictions that bar admission of an alibi notice if the notice has been withdrawn. Most of those jurisdictions appear to have adopted Fed. R. Crim. 12.1(f), which states: "Evidence of an intention to rely on an alibi defense, later withdrawn, or of a statement made in connection with that intention, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention." Additionally, the State has cited three states, Maine, New Mexico, and North Carolina, which, it asserts, bar admission of alibi notices outright. The State argues that "[b]y failing to take into account whether Sims withdrew his notice, the Court of Special Appeals effectively adopted one of the most restrictive alibi-notice-admissibility rules in the country." The purpose and function of an alibi defense, however, would be compromised were we to hold that in order to

preclude admission of a notice into evidence, a defendant is required to withdraw it before or during trial. The defendant's right to raise an alibi defense is preserved throughout the trial because, "like any other defense testimony, [it] is simply a means of controverting the State's effort to establish criminal agency." *Robinson v. State*, 20 Md.App. 450, 459, 316 A.2d 268 (1974). Thus, the fact that the notice was not withdrawn has no bearing on the issue of admissibility in this case.

### III. Harmless Error Analysis

■ The Court of Special Appeals held that the trial judge's error was not harmless beyond a reasonable doubt because "the strength of the State's case was not so overwhelming as to render the error inconsequential[,]" and because the court's instruction to the jury to disregard all references to alibi witnesses except as to Sims's mother and father "highlight[ed] [Sims's] failure to pursue his alibi defense by calling his parents to explain his whereabouts." *Simms*, 194 Md.App. at 323, 326–27, 4 A.3d at 94, 96. Taking issue with the intermediate appellate court's holding, Petitioner contends that any error in admitting the redacted notice was harmless beyond a reasonable doubt, because: "the redacted alibi notice in this case contained very little information—just Sims's father's name and address[;] . . . Sims never withdrew the notice[;] . . . the prosecutor made no mention of the alibi notice in closing, and made clear that Sims had no burden[;] . . . the record contained other evidence showing consciousness of guilt—Detective Diaz's testimony highlighting the differences between his interview of Sims and the jailhouse telephone calls[;] . . . [and] [t]he evidence of guilt was strong." Respondent counters that Petitioner's burden to show that the error was harmless has not been met because the "State's evidence against Mr. Sims was very thin" and essentially "the trial was a swearing match" between conflicting eyewitnesses where the State "asked the jury to fully credit the witness who testified that Mr. Sims did *not* resemble the shooter (Mr. Thompson), while asking the jury to

question the credibility of the witnesses who identified Mr. Sims (the Hugginses)." Further, Respondent argues that the alibi notice "took the form of a pleading, with the name of the trial court on the top, the caption listing the case title just below that, and the signature of Mr. Sims's counsel at the bottom[,]" and that "the document went to the jury room, where it served as a tangible reminder that Mr. Sims had disclosed a possible alibi defense but elected not to present it."

In *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976), we explored the fundamental purpose and constitutional basis for the harmless error test and, then, concluded that

> when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must be satisfied that there is no reasonable possibility that the evidence complained of— whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*Dorsey*, 276 Md. at 659, 350 A.2d at 678; *accord Perez v. State*, 420 Md. 57, 21 A.3d 1048 (2011); *Dove v. State*, 415 Md. 727, 4 A.3d 976 (2010); *Bellamy v. State*, 403 Md. 308, 941 A.2d 1107 (2008); *Denicolis v. State*, 378 Md. 646, 837 A.2d 944 (2003). Accordingly, the burden rests upon the "beneficiary of error ... to demonstrate ... that such error did not contribute to the conviction[.]" *Dorsey*, 276 Md. at 658–59, 350 A.2d 665; *see also Dove*, 415 Md. at 743, 4 A.3d at 985 (noting that the standard "is highly favorable to the defendant," and "'the burden is on the State to show that [the error] was harmless'") (quoting *Denicolis*, 378 Md. at 658–59, 837 A.2d at 952).

As in *Dorsey*, "[a]pplying [the harmless error] test to the facts of this case, upon our own independent review of the entire record, we are not persuaded beyond a reasonable doubt that" the admission and subsequent presentation of the redacted alibi notice to the jury, "which posited before the

jury" the implication that the defendant lied about having an alibi, thus possessed a guilty mind, and consequently was guilty of the crimes charged, "by evidence irrelevant and extraneous to the issue of the [defendant's] guilt or innocence, did not contribute to the guilty verdict returned against [Sims]." *Dorsey*, 276 Md. at 659, 350 A.2d at 678 (holding that admission of a detective's testimony concerning the defendant's arrest-conviction record was not harmless error).

The State offered the redacted alibi notice to show that Sims "concocted a false alibi," as circumstantial evidence that he had committed the alleged offenses. The notice identified Sims's father, by name and address, as a potential alibi witness. Additional information in the disclosure document, such as "date, time, and specific location" of alibis, would not make a defendant's assertion that he has an alibi more or less probable. The redacted alibi notice was entered into evidence for consideration by the jury. While the prosecutor's failure to further discuss the document might imply that the jurors were less likely to be influenced by the document, this cannot be the test. If the test for jury impact was based only on what the attorneys said during closing arguments, prosecutors could protect wrongful convictions based on inadmissible evidence by avoiding direct reference to any possibly offending evidence during closing arguments.

The State's argument that other consciousness of guilt evidence renders the alibi notice cumulative is not persuasive. We recently discussed cumulative evidence under the harmless error standard in *Dove*, stating:

> Evidence is cumulative when, beyond a reasonable doubt, we are convinced that "there was sufficient evidence, independent of the [evidence] complained of, to support the appellant['s] conviction[ ]." *Richardson v. State*, 7 Md.App. 334, 343, 255 A.2d 463, 468 (1969). In other words, cumulative evidence tends to prove the same point as other evidence presented during the trial or sentencing hearing. For example, witness testimony is cumulative when it repeats the testimony of other witnesses introduced during the State's case-in-chief. *See Hutchinson* [*v. State* ], 406

Md. [219,] 227–28, 958 A.2d [284,] 288–89 [ (2008) ] (holding that improperly admitted expert testimony was not cumulative when the testimony "did not repeat the testimony of any of the prior witnesses introduced during the State's case-in-chief" and the testimony asserted that the victim's injuries were consistent with her description of the incident). "The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded." *Ross v. State,* 276 Md. 664, 674, 350 A.2d 680, 687 (1976).

*Dove v. State,* 415 Md. at 743–44, 4 A.3d at 985–86. In this case, we cannot say that the alibi notice was sufficiently cumulative so as to not impact the jury. A juror might reasonably conclude from the recorded conversations between Sims and his mother that Sims was merely looking for alibis, not falsely manufacturing them. Even Sims's statement to an acquaintance, "I gotta like 20, 25 people already signed papers and everything saying I was in the house the whole time," is of a different quality than a prepared and filed document listing the name and address of an alibi witness who is never called to the stand.

Furthermore, the trial judge referred to the tape-recorded telephone conversations, as well as the "references to potential alibi witnesses" and explicitly directed the jurors that they should "strike from [their] mind[s] any references about alibi witnesses except as the testimony concerned the defendant's father and mother. Other than father and mother, you should strike it from the record and do not consider it." The trial judge's exhortation raises the "reasonable possibility that the evidence ... may have contributed to the rendition of a guilty verdict[,]" *Dorsey,* 276 Md. at 659, 350 A.2d at 678. Accordingly, the admission of the alibi notice into evidence was reversible error and the defendant is entitled to a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE**

COURT OF SPECIAL APPEALS TO BE PAID BY THE
MAYOR AND CITY COUNCIL OF BALTIMORE.